Steinauer *v.* The City of Tell City *et al.*

STEINAUER *v* THE CITY OF TELL CITY ET AL.

[No. 17,360. Filed January 5, 1897.]

DEDICATION.—*Acceptance.*—In order to constitute a complete and valid dedication of land to the public, it must be shown that the owner of the land clearly and unequivocally indicated by his . words or acts to dedicate same, and there must also be an acceptance thereof by the public.

SAME.—*Revocation.*—The owner of lands dedicated to the public may at any time prior to the acceptance thereof by the public revoke such dedication.

SAME.—*Town Plat.—Acceptance.—Revocation.*—Where a town plat did not separate a small triangular lot at the intersection of two streets from the streets, and two years after the recording of such plat, a corrected plat was made and recorded which did reserve such strip of land, the making and recording of said first plat did not constitute a dedication of such strip of land to the public, where there was no evidence that the owner intended to dedicate same to the public and no evidence of an acceptance thereof by the public.

From the Perry Circuit Court. *Affirmed.*

*Alexander Gilchrist* and *C. A. DeBruler*, for appellant.

*J. T. Patrick, C. L. Jewett, H. E. Jewett* and *Inglehart & Taylor*, for appellee.

JORDAN, C. J.—Action by the appellant to enjoin the appellees' city of Tell City and the Louisville, Evansville, etc., Railroad Company, from erecting and maintaining a freight and passenger depot on a triangular strip of ground situated within said city,

which strip, the appellant contends, is a part of a public street adjacent to his residence. Upon the issues joined between the parties there was a trial by the court and a special finding of facts, and upon the conclusions of law thereon, the court rendered its judgment in favor of appellees. The only errors assigned are those arising under the court's conclusions, based upon the special finding.

The theory upon which appellant's complaint proceeds is, that the strip of land upon which the depot of the railroad company is about to be erected, by virtue of a grant of right from the city, is a part of Seventh and Front streets, of the city of Tell City, and had been dedicated as a portion of these streets by the Swiss Colonization Society, which laid out and platted this city in 1859. Equitable relief by injunction was sought under the facts alleged in the complaint against the wrong and injury which the appellant alleged he would especially sustain as an owner of abutting property.

The facts material to a determination of the controversy involved are disclosed by the special finding as follows:

"First. In the year 1859 the Swiss Colonization Society was the owner in fee-simple of all the real estate upon which the defendant, the city of Tell City, is now situated, and in that year said Swiss Colonization Society laid out and founded Tell City, caused a map, or plat, of said real estate to be prepared by A. Pfaefflin, a surveyor, and caused the same to be recorded in the recorder's office of Perry county, on the 18th day of October, 1859, a copy of said plat, as so recorded, is attached to and made a part of the findings.

"Second. After making said plat on the 21st day of March, 1859, prior to recording the plat, said society,

for a valuable consideration, conveyed lot one (1) in block C, as shown in said plat, to August Peters, by deed, specifying said lot as described in map of Tell City, surveyed and drawn by A. Pfaefflin; said deed was duly recorded in the recorder's office of Perry county, Indiana, on the 18th day of October, 1859.

"Third.   On the 6th day of August, 1859, said society made a deed of lot No. two (2) in block C to Peter Pfaefflin, which was duly recorded in the recorder's office of Perry county, on the 15th day of August, 1859, before the plat of Tell City was recorded.   On the 10th day of May, 1859, said society made a deed of lot three (3) in block C to Charles Steinauer, and the same was on the same day recorded in the recorder's office of Perry county; that on the 17th day of April, 1859, the said society conveyed lot two (2) of block fifty-one (51) to Louisa Heck, and on the 20th day of May, 1859, the said society conveyed lot three (3) of block fifty-one (51) to Susannah Snider, both of said deeds last named were duly recorded in the recorder's office of Perry county, within ten (10) days after their execution.   That after the conveyances had been made by said society, which was before the plat of Tell City was recorded, and before the plaintiff had obtained title to any of the real estate hereinbefore mentioned, said society caused a corrected plat of Tell City to be made and acknowledged; said plat was duly recorded in the office of the recorder of deeds of Perry county, on the 28th day of January, 1861, and has never since been modified or changed.   That in the acknowledgment and dedication of said last named plat, the following statements and reservations were made, namely: 'All lying between the blocks fronting the Ohio river and said river, and not enclosed by lines on the map are expressly reserved to said society;' that the triangular

piece of ground in controversy in this action was a
tract of ground, lying between a block fronting on the
Ohio river and said river, and was one of the parcels
of ground referred to in said statement and reserva-
tion. On the 5th day of May, 1862, the said August
Peters conveyed said lot one (1) in block C to the
plaintiff herein, by deed, which specified that the same
lot which was conveyed by the Swiss Colonization So-
ciety to August Peters, conveyed all property with the
privileges and appurtenances to the same belonging.
On the 21st day of August, 1862, said Peter Pfaefflin
conveyed by deed lot two (2) in block C to the plain-
tiff; that on the 21st day of June, 1862, the said
Charles Steinauer conveyed by deed lot three (3) in
block C to the plaintiff; that on the 12th day of
May, 1862 (about sixteen months after recording the
corrected plat), the said society conveyed to Steinauer
and Wegman lot four (4) in block fifty-one (51), and
that after the 12th day of May, 1862, and in or before
the year 1865, by a certain mesne conveyance, the title
of Louisa Heck to lot two (2), block fifty-one (51); the
title of Susannah Snider to. lot three (3), block fifty-
one (51), and the title of Steinauer and Wegman in lot
four (4) in block fifty-one (51), were conveyed to this
plaintiff, that each and all of the deeds hereinbefore
found to have been executed to plaintiff in referring
to the real estate conveyed in such deed, referred to
the plat of Tell City, and that each of said deeds was
duly recorded in the recorder's office of Perry county
within ten (10) days after its execution; that soon
after the plaintiff received the deeds for lot one (1),
two (2) and three (3), in block C, he took possession
of the same, and within a year thereafter he erected
upon said lots one (1) and two (2) a two-story brick
residence, at an expense of several thousand dollars,
for a family residence, and plaintiff with his family

has ever since lived in said house; said house was built with its principal front on Seventh street, and with another front upon the triangular space, at the intersection of Front and Seventh streets, which last named front had two doors and three windows in the lower story, and four windows in the upper story; said residence was surrounded by a fence, this fence was built along the line of plaintiff's lot on Seventh street and along the line of plaintiff's lot on Front street; instead of building the same on the line of lot one (1) and said triangular space of ground, said plaintiff built said fence twelve (12) feet east of the line of lot one (1), so that during all this time he has inclosed by his said fence part of said triangular piece of ground the entire width of the same north and south and about twelve (12) feet in length east and west. Plaintiff built this fence at this point upon the statement of the city engineer that it was the line of plaintiff's lot; there was no opening or gate in the fence in front of plaintiff's house, where the same fronts upon the triangular piece of ground aforesaid, nor has there ever been any entrance to, or exit from said house through said fence, into said triangular piece of ground.

"Fourth. That in the year 1865, and soon after receiving the conveyances of lots two (2), three (3) and four (4) of block fifty-one (51), the plaintiff erected a large flouring custom mill, upon said lots, and has maintained the same in the same place ever since, and said mill has during all said time been operated by the plaintiff and is now operated by him in grinding for customers, and doing other work at said mill, and said mill has obtained a large custom and business from farmers and others in the neighborhood of Tell City.

"Fifth. At all times since the making of the said plat, the triangular space at the intersection of said

Seventh and Front streets has been kept open, and no structures of any kind have been placed upon it, except that public scales have been maintained upon it by the plaintiff, with consent of the city of Tell City, for the general use of the people of Tell City and of the surrounding country, the plaintiffs paying an agreed consideration to Tell City for the privilege of having said scales in said place. Said scales are on the level of the surrounding soil, and is no obstruction to the passage and is the ordinary kind placed in streets or other open places. Seventh street in said city has been improved by graveling; Front street has not been improved, and the triangular space at their intersection has not been improved and has not been much traveled on, but at all times has been open for persons to pass and repass. No sidewalks have been made around said triangular space. The defendant railway company, with the permission of the plaintiff, and of the city of Tell City, a number of years ago, laid its track on Front street opposite plaintiff's lot and opposite the triangular space aforesaid, and has operated its railway ever since over said track."

The sixth finding may be summarized as follows: That prior to the beginning of this action, Tell City agreed to convey to its co-appellee, the railroad company, the strip of ground in dispute, upon the agreement of the latter to erect and maintain thereon a passenger and freight depot. The appellees threaten to carry out their respective agreements, and will do so unless restrained by the court. That the station or depot to be erected and maintained by the railway company is to be separated by a space of thirty-seven feet, from the fence on the east side of plaintiff's lot, and a distance of forty-nine feet from the rear line of plaintiff's lot one, in block C, and said depot building will cover said triangular strip. A driveway is to

be left between said depot and the fence south of plaintiff's house, on the east side of the strip. On the side next to Seventh street the company intends to construct a switch track. That the company has neither tendered nor offered to pay any damages to plaintiff, and declares that it does not intend to do so.

The further finding is that the necessary effect of trains stopping or standing at the station will be to cut off access to plaintiff's real estate, in block C, from said strip of ground, and also to interfere with access to his real estate in block fifty-one on the east side of Seventh street. That the said structure and track, and the use of the same by the railroad company, will not interfere with access to plaintiff's real estate in block C from Seventh street, nor will the same interfere with access to his real estate from Front street, other than the same is now interfered with by the track laid, with the permission of the plaintiff; neither will said depot or the laying of said switch in any way obstruct the street in front of his property in block fifty-one (51) up to the middle line of said street. On September 2, 1878, said Swiss Colonization Society, by deed, conveyed all fractions and fractional blocks fronting on the Ohio river, as shown on the map of Tell City, to the city of Tell City, for uses and purposes set forth in said deed.

The trial court, upon the facts found, stated its conclusions of law in favor of appellees and rendered its judgment accordingly.

As stated, the appellant asserts that the strip in dispute is a part of the public streets upon which his premises abut, and that the same is a street within the city, by virtue of its being dedicated by the Swiss Colonization Society, under its plat, recorded October 18, 1859. This disputed fact seems to be the basis upon which he rests his right. Counsel for appellee

Steinauer *v.* The City of Tell City *et al.*

controvert this contention and insist that the facts found do not support it. They further contend that if the facts can be held to sustain appellant's theory, that it was the intention of the original owner and founder of Tell City, namely, the Swiss society, to dedicate this strip of ground to the public for use as a street, it does not appear that there was an acceptance thereof, either on the part of the public or public authorities. It is also insisted that if it can be said that a dedication was intended by the plat first recorded, such dedication was revoked before any acceptance took place, by the corrected plat, recorded in January, 1861. The questions, therefore, presented for determination are: (1) Was there a dedication and acceptance of this strip, as contended by appellant? (2) If there was an intention to dedicate the strip to the public, as a street, under the original plat of 1859, was it revoked by the owner before its acceptance, by the corrected plat, made and recorded in 1861?

In order to make a dedication of a highway or a street complete on the part of the public, as well as the owner of the ground, it must be shown that there was an acceptance of such dedication by the public or proper local authorities. Elliott on Roads and Streets, p. 113; *Mansur* v. *Haughey,* 60 Ind. 364; *Ross* v. *Thompson,* 78 Ind. 90; *Tucker* v. *Conrad,* 103 Ind. 349; *San Francisco* v. *Canavan,* 42 Cal. 541; *People* v. *Underhill,* 144 N. Y. 316.

The holding of the above authorities, together with a long line of other decisions, well establish the rule that to constitute a valid and complete dedication, two things must occur, to-wit: an intention by the owner of the land, clearly and unequivocally indicated by his words or acts, to dedicate, and also an accept-

ance of the dedication by the public. *Vide* Elliott on Roads and Streets, p. 120. Before there is an acceptance by the public, as a rule, the authorities hold that the owner may at any time revoke his dedication. Elliott on Roads and Streets, p. 113, and cases cited under note 1.

As disclosed by the finding, the Swiss society was the owner of the lands upon which the city is situated. In 1859 it made a plat of the town, which was not recorded until October, of that year. All of the lots in question of which the appellant is the owner, were sold to the persons through whom he claims title, in 1859, prior to the recording of the first plat. This plat, for some reason, seems to have been incorrect, and a corrected one was made by the society and recorded January 28, 1861. By this latter plat, it appears from the finding, that the strip of ground in controversy was reserved by the society. After the recording of this plat, appellant, in 1862, and subsequent to that year, acquired title to the lots mentioned in block C and block fifty-one. This triangular strip, it appears, lies between lot one, owned by appellant, in block C, and the point where the line of Seventh street and the east line of Front street meet. It is not within the boundaries of either of these streets, and from its situation, as shown by the map, it does not appear to be of any use to these respective streets, or to afford any reasonable or necessary use to the public as a way. While it is true that the plat in question did not separate it from the streets by lines, nevertheless we think the reason for this is apparent. The lots owned by appellant and composing the fractional block C ran from Seventh to Front street, and were marked and bounded so long as there was sufficient depth to constitute a lot; and this little triangular fragment of land, it would seem, was left over, for

that reason, without specifically indicating the purpose it was to serve.

Under all the circumstances, we do not think this is sufficient to reasonably raise the presumption that the society intended to dedicate it to the public. There is no express finding by the court showing that the society intended to dedicate this ground to any purpose. Evidentiary facts, tending to prove an intended dedication, or from which the same might possibly be presumed, are not of themselves such intended dedication. *Tucker* v. *Conrad, supra; Shellhouse* v. *The State,* 110 Ind. 509. If it could be said that there was an intended dedication by the Swiss society under its first plat, it does not appear that it was accepted by the public, or public authorities, before it was recalled, as the court finds, by the corrected plat.

If, under the facts, it could be held that the strip was in any way dedicated as a street, there is no finding of facts sufficient to prove that the public at any time accepted such dedication. This, as the authorities cited show, is essential.

This strip has not been in any way improved as a street. Neither has it been traveled nor used to any extent, as the finding discloses. There being an absence of user sufficient to constitute an acceptance, there must be proof of an acceptance on the part of the public authorities of Tell City by some formal act of theirs, showing an unmistakable intention to accept the land dedicated, and for the purposes for which it was intended by the dedicator to be used. *People* v. *Underhill, supra.* There seems to be virtually an entire absence of any such facts. Considering the acts of appellant, it does not appear that he himself recognized this ground as having been dedicated as a public street.

He appears to have enclosed part of it within his

own premises. After the conveyance by the society, in 1878, to the city, he leased it from the latter, and located his scales thereon, paying a rental for this privilege.

Neither of the parties to this controversy, appellant nor the city, appear to have treated the strip now in dispute as a public street prior to the time the controversy arose. The acts of appellant in using it as a location for his scales, with the permission of the city, and paying a rent for this use, are of themselves to some extent inconsistent at least with his present contention that the strip was dedicated as and for a public street.

We think, under the facts, the court correctly held the law to be with appellee, and the judgment is therefore affirmed.