## THE GERMAN BANK v. BROSE ET AL.

[No. 4,583.　Filed December 16, 1903.]

MUNICIPAL CORPORATIONS. — *Streets.* — *Dedication.* — *Evidence.* — The failure of the city to repair a street or exercise control over it, though admissible in evidence on the issue as to the existence of the street, is not conclusive evidence against former dedication. *p. 85.*

SAME.—*Streets.*—*Dedication.*—*Evidence.*—The action of the city in instituting condemnation proceedings for the opening of a street and the assessment of benefits and damages on the theory that no street existed, while admissible on the issue as to the existence of the street, is not conclusive evidence of former dedication. *p. 85.*

SAME.—*Streets.*—*Dedication.*—Mere permissive use of land as a street does not of itself constitute a dedication thereof. *p. 85.*

German Bank v. Brose.

MUNICIPAL CORPORATIONS.—*Streets.*—*Dedication.*—The intent to dedicate need not actually exist, but must appear to exist. *p. 85.*

SAME.—*Streets.*—*Dedication.*—*Acceptance.*—*User.*—The long continued use of a street by the public is sufficient evidence of acceptance. *p. 87.*

SAME.—*Streets.*—*Dedication.*—*Intention.*—Where no express dedication appears, the question whether there was an intent to dedicate becomes a mingled one of law and fact. *p. 87.*

From the Superior Court of Vanderburgh County; *J. H. Foster*, Judge.

Suit by the German Bank of Evansville against Thomas P. Brose and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Peter Maier, Alexander Gilchrist, C. A. De Bruler* and *J. D. Welman*, for appellant.

*D. C. Givens, R. D. Richardson* and *D. H. Ortmeyer*, for appellees.

COMSTOCK, J.—Appellant, plaintiff below, brought this action against the appellees to restrain them from tearing down the fences which were put up by the plaintiff across a portion of block eighty-seven, Lamasco, in Evansville, which block was the property of the plaintiff. The only controversy was whether that portion of block eighty-seven upon which the fences had been erected by the plaintiff and torn down by the defendant had become a street either by prescription or dedication.

The complaint avers the ownership in fee simple by plaintiff of this block eighty-seven; that the defendants, Brose & Arnold, on the pretense that there is a street on the west side of block eighty-seven, were unlawfully entering upon it and driving over it and causing others to drive over it; that to prevent these acts the plaintiff erected a fence along the front of the block; that the defendants caused said fence to be destroyed, and that those defendants threaten to continue their wrongful trespasses, etc. As to the city of Evansville and its board of public works the averments are that neither the city nor the board of public

works has ever exercised any authority over the real estate so claimed to be a street, nor asserted any claim to it, and they are made defendants that they may assert any right or claim to the portion of the block in question. The relief asked is that the defendant be inhibited from going upon said real estate and from asserting any title to it. The answers are general denials by all the defendants and special answers by the city of Evansville and by the defendants, Brose & Arnold, asserting in various forms of language that the place in question where the alleged trespassing occurred was a public street both by prescription and dedication. There was a reply in general denial to each of such affirmative answers. Demurrers were filed to the answers of prescription and dedication by the plaintiff, and were overruled. No question is made on this appeal on those demurrers. The issues were decided in favor of the defendants. The judgment was that the plaintiff take nothing by its action.

The error assigned is the overruling of appellant's motion for a new trial. The reasons set out in the motion for a new trial relied upon for reversal are: (1) That the finding of the court is not sustained by sufficient evidence; (2) the admission in evidence, over plaintiff's objections, of the order of the board of public works of the city of Evansville rescinding the resolution of the said board of public works to open a street at the place in question; (3) allowing the witness Fred Christman, over the plaintiff's objection, to testify to what he said to the man who was putting down the pavement in front of the real estate in question; (4) the permitting of the witness Henry Arnold, one of the defendants, over the plaintiff's objection, to testify that about ten years before the time of the trial there was a sign "Eighth Avenue" on the house of Fred Christman, adjoining the real estate in question.

This block was held and conveyed at all times as a whole from the time it was platted, in 1837, until its conveyance

to the plaintiff, although there were at different times con-
veyances and holdings of an undivided interest in it.   On
the only recorded plat no street is shown over this block.
Eighth avenue, which is claimed by defendants to be a
street over block eighty-seven, stops, as will be seen on the
plat, two blocks south of block eighty-seven, and as shown
by defendants' plat attached hereto.   Appellees claim a
complete dedication and an adverse user by the public for
over twenty years.

That the evidence may be better understood we make a
copy of the map put in evidence by the defendants a part
hereof, except that the fence shown on that map on the east
of the place marked the "traveled way" and on a portion of
the side of the block next to Franklin street is omitted,
because, as shown by the evidence of the witness who made
the map, the fence is a recent one.

MAP OF BLOCK 87 AND VICINITY.

German Bank *v.* Brose.

As will be seen, the street called Eighth avenue, which appears on the original plat south of the block in question, and on defendants' plat, as extending north from Franklin street could not be continued through because of the water marked "Fish Pond" on the original plat and "Sweezer's Pond" on the defendants' map. It also appears that it could not be continued in its full width even as far south as the south boundary of block eighty-seven because of Sweezer's pond and its banks, and no traveled way of any width above shown on this plat goes farther south than the south line of block eighty-seven. The flour mill of the defendants, Brose & Arnold, fronts on Bellevue avenue and had a vacant space behind it. The space marked "traveled way" from Franklin street turns off into an alley twelve feet wide in the middle of block eighty-eight. It also turns off at the south end of block eighty-eight into another alley sixteen feet wide. Persons turning from Franklin street upon the place so marked could go to another street by passing through one of these alleys. At different times business of various kinds was carried on in the block—a distillery, a woolen-mill, a furniture factory, a warehouse, a fertilizer mill, chair works, and sawmill. The same building was used at different times for the distillery, woolen-mill, chair works and sawmill. The chair factory was burned in 1882. Stockfleth & Wiggers, who owned the block from July, 1881, to October, 1885, carried on business there until August, 1884. After that date the block was vacant and unoccupied until the fence was built by the plaintiff, before the bringing of this action. The mill of Brose & Arnold, as shown on the plat, was built in 1883. During the time that Stockfleth & Wiggers owned it they put up a fence along the front of the Franklin street line, leaving a space large enough for a wagon to go through. A gate was made for this space, but was never hung. The posts on which the gate was to be hung were about twelve feet from

a saloon kept by a man named Christman. There was some travel over this space. Mr. Stockfleth testified that he objected and told the people that it was not a public driveway.

F. W. Cook, witness for the appellees, testified that he owned block eighty-seven until 1881; that he knew the roadway in question was then in existence and that the traveled part was thirty or forty feet wide: "I know that we used to get our supply of coal that way, and I was under the impression that there was a street through there. I looked upon it as a street. I permitted people to use it as a street. I never made any objection to anybody traveling there. It was used as a street, and I had no objection to it. I did not question the matter at all. I was under the impression that it was a street." Upon cross-examination the witness said: "I always thought that it was open, but I never cared anything about it. And as to the hauling, I could not say that it was all for the people who had possession of my property, or whether it was for some one else. I can't say that all that hauling was for my tenants. I did not think that it was a part of block eighty-seven when I made my deed, or I would not have given a deed for that." John H. Osborn, a witness for the appellees, testified: That the roadway in question has been traveled and has been open at all times for twenty-five years; that the traveled part was thirty or forty feet wide; that he had a talk with Charles Schultz while Schultz owned block eighty-seven, at a time when he (Schultz) was building a dry-house and planing-mill at the intersection of Eighth avenue and Ohio street; that he asked Shultz why he did not build across the gap made by Eighth avenue, and Schultz said: "This (meaning Eighth avenue) is a street through here, and I can't close that up;" that Schultz said about Eighth avenue, "that there was a street clear through to Franklin street." The foregoing is the only oral testimony throwing light upon the intent or understanding of any of the owners

of the property. There was no evidence that the city had expressly accepted any dedication. It is not claimed that it ever did any work upon it.

A number of witnesses testified as to the use of the ground in question. Among them was Henry Arnold, who testified as follows: That he is one of the defendants and a member of the firm of Brose & Arnold; that he has been acquainted with the locality in question all his life, and has worked there twenty-two years; that as long as he can remember that driveway was used by the public, and that customers to the defendants' mill used it constantly; people go in from Franklin street and go out Illinois street; farmer, grocery, and lumber wagons use the roadway; that everybody uses the roadway; that the traveling would amount to more than a thousand wagons a year, and probably five thousand; that the roadway was used by Ballew in his hoop-pole business, and also by Harper and Brinkmeyer when they did business in Ballew's building; Rosenberger & Klein stored broomcorn in there, Schultz & Waltman stacked lumber in there, and Kramer had one of his sheds in there; these parties came in Illinois street and went out the roadway past Christman's; that from the time the defendants were in business at their present location (1883) until ten years ago, when the house burned down (1890), there was a sign on the side of Christman's house nearest to block eighty-seven which read "Eighth Avenue;" that he does not know who put the sign there; that there are similar signs on nearly every corner in that part of the city, and that he never saw one that was not correct.

There was abundant evidence that the traveled part of the roadway was thirty or forty feet wide, and had been used by the public as a roadway for general purposes for thirty years. The people were driving through there continually, and were not confined to those who lived or did business in that immediate vicinity, and that there had been no obstruction to driving through there for the last

twenty-five years.  There was evidence that the city had not accepted it, to wit; the city instituted proceedings on May 14, 1898, to condemn the place in question for a street, and carried them so far as to assess benefits and damages.  The defendants, Brose & Arnold, were assessed $145 for benefits, and the plaintiff was to receive net $400 damages.  The board of public works on November 26, 1898, assessed the whole front of block eighty-seven—480 feet—for the improvement of Franklin street, and made no deduction because of the front being taken up by the alleged street.  The board of public works made a like assessment against the plaintiff on block eighty-seven for the year 1899 for sprinkling Franklin street, and made the assessment for the whole 480 feet, with no diminution because of any space for the alleged street.  By the proceedings of . May 14 the city admitted that up to that date the highway claimed did not exist.  By the said assessments made after the condemnation proceedings there was an unequivocal refusal to recognize any part of the said block as a public street.  In addition the city never did any work in the way of repairs on the ground it questioned, and never exercised any control over it.  There was a bridge or wooden culvert thirty or forty feet wide from Franklin street across the gutter, which, in the opinion of one of the witnesses, was put there chiefly for the convenience of Mr. Christman.

This action, however, would not conclusively affect the rights of the public or of individuals in relation to it.  The erroneous acts of officials in taxing for municipal purposes cannot impair the rights of the public.  *Rhodes* v. *Town of Brightwood,* 145 Ind. 21, 30.

In Elliott, Roads & Sts. (2d ed.), §154, the author says: "The municipal corporation consists of the inhabitants and not of the officers; the officers are, in truth, nothing more than the agents of the corporation.  The inhabitants, therefore, stand to the officers as principals, and if the principals have, by their conduct, accepted the dedication, it is of

no great importance that the agents have taken no action in the matter. The inhabitants of a locality having by long continued use treated the way as a public one, they make it such without the intervention of those who derive their authority from them. Creating towns, cities, and other public corporations, is 'but the investing the people of the locality with the government thereof,' and they may themselves exercise the powers of government of highways quite as effectually by continued use as by any other method."

So, while the failure of the city to work the street or exercise control over it and the condemnation proceedings were proper evidence they were not conclusive evidence against former dedication. There was no express dedication or acceptance of the street. Was there an implied dedication and acceptance? The weight of authority is that long-continued use by the public is sufficient evidence of acceptance. *Ross* v. *Thompson,* 78 Ind. 90, 96.

Where a highway is beneficial to the public, an acceptance will in general be implied. Elliott, Roads & Sts. (2d ed.), §§152, 154.

The intent to dedicate may be inferred from facts without express declarations. Yet the facts must be such as to indicate an unequivocal intent to devote the strip of land to the public use. Mere permissive use of the land does not of itself constitute dedication. Such permissive use is an evidentiary fact tending to prove dedication. The intent need not actually exist in the mind, but it must appear to exist. User is of importance both as evidence of intent to dedicate and as evidence of acceptance. If the acts of the owner are such as fairly to lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner can not, after the acceptance by the public, recall the appropriation. Elliott, Roads & Sts. (2d ed.), §§123, 124.

Judge Elliott quotes Mr. Woolrych as follows: "It is, therefore, rather the intention of the owner than the question of time which must determine the dedication." Elliott, Roads & Sts. (2d ed.), §160. To the same effect is Dillon, Mun. Corp., §631.

In *Pittsburgh, etc., R. Co.* v. *Town of Crown Point,* 150 Ind. 536, 548, it is said: "However, we have no doubt, that, strictly speaking, the user in the case of a street or highway, which, as between individuals, would constitute an easement by prescription, is evidence of a dedication or of a condemnation. In other words, that which is a prescriptive right, as between those capable of granting and receiving title, is, as between the fee owner and the public, sufficient to raise the presumption of a dedication or a condemnation."

In the *Town of Marion* v. *Skillman,* 127 Ind. 130, 136, 11 L. R. A. 55, the court say: "As is also the principle that all that is necessary to constitute such a dedication is the assent of the owner of the soil to the public use, and the actual enjoyment by the public of the use for such a length of time that public accommodation and private rights would be materially affected by a denial or interruption of the enjoyment." *State* v. *Hill,* 10 Ind. 219; *Mauck* v. *State,* 66 Ind. 177; *Summers* v. *State,* 51 Ind. 201; *City of Indianapolis* v. *Kingsbury,* 101 Ind. 200, 51 Am. Rep. 749.

In *Cromer* v. *State,* 21 Ind. App., 502, 505, the court say: "There was no error in giving the thirteenth instruction in which the jury was told that, 'if a landowner, by open and visible acts, unequivocally indicates to the public and its citizens an intention to throw open a street or alley to the public, and the citizens and the public have acted upon the faith that there was a dedication, the law will treat the acts of the owner as constituting a dedication.' *Faust* v. *City of Huntington,* 91 Ind. 493."

From many holdings that acceptance will be implied from general and long-continued user as of right by the public, we cite the following: *Lightcap* v. *Town of North Judson,* 154 Ind. 43; *Steinhauer* v. *City of Tell City,* 146 Ind. 490; *Rhodes* v. *Town of Brightwood,* 145 Ind. 21-31; *Ross* v. *Thompson,* 78 Ind. 90-96; Elliott, Roads & Sts. (2d ed.), §154; *Baker* v. *City of St. Paul,* 8 Minn. 491; *Mayor, etc.,* v. *United States,* 10 Pet. 662, 9 L. Ed. 573; *Smith* v. *City of San Luis Obispo,* 95 Cal. 463, 30 Pac. 391; *Marcy* v. *Taylor,* 19 Ill. 633. Even though public authorities have never done any work upon the roadway. *Green* v. *Elliott,* 86 Ind. 53-68; *Township of Madison* v. *Gallagher,* 159 Ill. 105-111, 42 N. E. 316.

The cases upon the subject of dedications and acceptance of public highways are almost without number. In the great majority of them where no express dedication appears, the question whether there was an intent to dedicate becomes a mingled one of law and fact. Where the facts are undisputed and admit of but one legal interpretation, the question is one of law. Where the intent is to be drawn as an inference of fact from the evidence, it becomes a question of fact. In the case before us the facts are conflicting, and the intent is to be drawn as an inference of fact both as to the dedication and the acceptance of the highway from the conflicting evidence. The "primal error" claimed is the insufficiency of the evidence to sustain the finding and judgment of the court. If there is evidence fairly tending to support such finding, then under the well-recognized rule the judgment should be affirmed. Sustaining evidence is not wanting.

We have set out the other three reasons for a new trial. The admission in evidence of the order of the board of public works rescinding the resolution to open a street at the place in question was not error.

The part of the testimony of Arnold objected to appears in parenthesis in his testimony heretofore set out.

He testified to the conditions at that locality as they appeared to him for a number of years. The fact that the name "Eighth Avenue" was on a house on a corner of the alleged street would not be conclusive upon appellant, but it was competent as tending to throw light, in connection with all the other circumstances proved, upon the manner the alleged street was regarded. Conceding, for the argument, that it was error to permit Christman to testify to what he said to the man who was putting down a pavement in front of the real estate in question, such testimony was harmless.

Judgment affirmed.