CITY OF HAMMOND v. STANDARD OIL COMPANY OF INDIANA.

[No. 11,538.    Filed March 9, 1923.]

1. EVIDENCE. — *Parol Evidence.* — *Admissibility.* — *Mistake in Written Instrument.*—*Intention of Parties.*—Parol evidence is admissible for the purpose of showing that by reason of a mistake a written instrument does not truly express the intention of the parties, and to show what their intention was. p. 365.

2. EVIDENCE.—*Parol Evidence.*—*Admissibility.*—*Construction of Plat of Land.*—Where the dimensions of land platted are not as great as the combined dimensions of the lots, streets, and alleys embraced in the plat, it is the duty of the court to determine the intention of the parties, the dedicator and the public, as to where the loss must fall, and for this purpose parol evidence of the surrounding circumstances, and of the acts of the parties, at the time and thereafter, giving practical construction to the plat, is admissible. p. 366.

3. DEDICATION.—*Requisites.*—*Intention to Devote to Use of Public.*—*Acceptance.*—To constitute a dedication there must be a clear intention to devote the ground claimed to have been dedicated to the use of the public, and an acceptance of such dedication by the public, or the proper local authorities. p. 367.

4. DEDICATION.— *Extent of Ground Dedicated.*— *Evidence.*— In an action to quiet title, evidence *held* to show that maker of plat intended lots to be each fifty feet wide, and, so making them, he could dedicate only the remaining strip of land embraced in the plat to the public for street use. p. 369.

From Porter Superior Court; *Harry L. Crumpacker,* Judge.

Action by the Standard Oil Company of Indiana against the city of Hammond and others. From a judgment for plaintiff against the named defendant, it appeals. *Affirmed.*

*McMahon & Conroy,* for appellant.

*R. J. Fellingham* and *C. B. Tinkham,* for appellees.

NICHOLS, C. J.—Action by appellee Standard Oil Company against appellant and appellees Bunnell to quiet title to certain real estate.

There was judgment for appellee company against appellant.

In this appeal the only error assigned is the action of the court in overruling appellant's motion for a new trial for the reason that the decision of the court was contrary to law and was not sustained by sufficient evidence and because of error of the court in admitting in evidence the testimony of witness W. F. Bridge as appears in such motion. We do not need to set out the pleadings.

It appears by the evidence which is undisputed that the parcel of land here involved is in the southwest corner of Latham's addition in the city of Hammond. A plat of this addition was made and recorded in May, 1880, by one M. M. Towle, who was then a resident of the city and the owner of the land. He died long before the beginning of this action. This addition is in the shape of a triangle and is located in the business district of the city. It is bounded on the northeast by Fayette street, on the south by Russell street and on the west by Hohman street, one of the principal streets of the city. The point of the triangle is to the east and at the junction of Fayette and Russell streets.

So much of the above-mentioned plats as is necessary to the understanding of the facts herein is as follows:

In March, 1882, Towle also made and recorded the plat of Towle and Young's Addition to the city. This addition lies immediately south of Latham's addition and shows a strip thirty feet wide as reversed for Russell street which is the street extending between these two additions. Towle and Young's addition is properly laid out and the plat is correct. Townsend and Godfrey's addition lies immediately north of Latham's addition and thirty feet is reserved out of that addition for Fayette street, which street extends between Latham's addition and Townsend and Godfrey's addition. Townsend and Godfrey's addition was laid out about a year before Latham's addition. On September 22, 1919, ap-

pellees Bunnell and Bunnell conveyed to appellee Standard Oil Company of Indiana, a parcel of land in the southwest corner of Latham's addition and marked as lot 8.  The deed conveys the west 100 feet of this lot, both by reference to the lot and also by metes and bounds, with the starting point beginning at the intersection of the east line of Hohman street and the north

line of Russell street.  According to the plat this lot fronts on Hohman street with a frontage of 50 feet and has a depth of 143 feet along Russell street.  This deed gave to the appellee the fee-simple title to the land described therein.  Russell street was improved with a macadam pavement about twenty-five years ago and this improvement still remains.  The center of this pavement is thirty feet from the south line of Russell

street as shown on the plat of Towle and Young's addition and is also twenty-three feet from the lot line of the lots in Latham's addition as they have been used and occupied. The pavement itself is thirty feet wide. The sidewalk and curb on the north side of Russell street is six and one-half feet wide and on the south side six feet wide. Between the sidewalk and the curb on the south side is a grassplot eight feet seven inches wide, making a total width for Russell street of about fifty-one and one-half feet. Allowing 53 feet for Russell street it would extend about one and one-half feet further north than the north line of the sidewalk on the north side. About the year 1900, cement sidewalks were constructed where they now are, and prior to that time there were board sidewalks on each side of the street, and they occupied the same place that the cement sidewalks now do. These board sidewalks were there at least 31 years ago, and at that time they were old and appeared to have been there a number of years, probably since about the year 1880. There was also a fence along the north line of Russell street, parts of which stood there as late as 1901. This fence stood twenty-three feet north of the center line of the macadam pavement on Russell street and was there in 1890. It was an old fence at that time and probably had stood there since 1880. Russell street extends on west from Hohman street to the state line a distance of about two blocks and the improvement on that portion of the street is in perfect alignment with the portion along the south side of Latham's addition. The width of Russell street west of Hohman street is fifty feet. The distance of the frontage on Hohman street of Latham's addition measured on the center line of Hohman street is 638.16 feet. The lot dimensions shown on the plat of Latham's addition cannot be placed within this distance by allowing a width of sixty feet out of this addition for Russell street.

By giving such dimensions to the lots, there would only be sufficient territory to allow twenty-three feet out of Latham's addition for Russell street. The actual length of the frontage of Latham's addition on Hohman street on the property line is 622.2 feet. The actual length of the lot frontage, allowing the dimensions shown on the plat of Latham's addition, exclusive of Fayette and Russell streets, is 579.2 feet, leaving forty-three feet for street purposes for both Fayette and Russell streets. Twenty feet of this has been used as a part of Fayette street and twenty-three feet as a part of Russell street. The thirty feet reserved from Towle and Young's addition for Russell street makes this street fifty-three feet in width, and the thirty feet reserved from Townsend and Godfrey's addition for Fayette street makes Fayette street fifty feet in width. The city has never taken any steps to occupy any portion of Russell street except that which is now occupied for street purposes, and never improved any other portion thereof. Witness Bridge, the city engineer, testified that he never knew Russell street to be over fifty-three feet wide since he came to Hammond in 1890. Along the north side of Russell street east from lot 8 and just across the alley on lot 9 is the First Methodist Episcopal Church, which comes within two feet of the north line of Russell street as improved. East of this is a string of cottages that the school board of the city of Hammond has bought with the intention of moving the old Central School building thereon; then there is a line of cottages reaching almost to the railroads and at the railroads is the Hammond ice plant. Across the railroads is the Dibos coal yard and a line of garages and business buildings ending with Maginot's feed store. All of these owners occupy these lots down to a line that is twenty-three feet north of the center line of the pavement on Russell street. The Maginot building stands snug with such

street line on lot 26, which is in the point of the triangle and fronts on both Fayette street and Russell street. The improvements on Hohman street are first an oil station on lot 8 built by the Standard Oil Company; on lot 7 is a frame building occupied as a restaurant; and on lot 6 is a two-story brick building, the south line of this building being the south line of lot 6. Each one of these lots has a fifty-foot frontage. The remainder of the buildings are substantial brick business blocks except at the corner of Fayette and Hohman streets which is occupied as the Central School property with a large permanent Central School building which has stood for more than twenty-five years. The Monon and Erie railroads extend north and south across Latham's addition and occupy lots 18, 19, 30, 31 and a part of lots 20 and 29. Bridge, who was then county surveyor, made a legal survey of certain property embraced in Latham's addition in the year 1905. When making the survey Bridge found a stone at the southeast corner of lot 6 which he had previously put there in the place of a well decayed stake. This stake and south line of lot 6 were, by actual measurement, just one hundred feet from the north line of Russell street as it was then occupied and used. He found another stake on Russell street about 175 feet west of the railroads and on the southeast corner of lot 16. That stake was located twenty-three feet north of the center line of the paved portion of Russell street. Bridge further testified that in 1900, he made a survey of lot 6 for one Schrum, who was then the owner, and that it was at that time he found the old stake at the southeast corner of lot 6 and replaced the stake, which was decayed, with a stone; that he was and is of the opinion that such stake was the original stake placed there at the time of the original survey. That he has his original field notes made of the Schrum survey and these field notes made by him at the time shown

that this stake was 153.1 feet north of the south line of Russell street. That was allowing 100 feet for the widths of lots 7 and 8 and 53.1 feet for the width of Russell street. The plat of Latham's addition shows the west line of lot 40 and also of lot 9 as being 235 feet. This is incorrect and mathematically impossible. The measurement shown on the plat of Latham's addition of 178 feet for the south line of lot 26 which is the Maginot lot in the point of the triangle, is absolutely impossible if you take any other dimension than that of fifty feet for Fayette street and fifty-three feet for Russell street. Bridge in making the legal survey used the southeast corner of lot 6 as a starting point largely, together with a study of the subdivision as a whole and the occupations. He testifies that the plat of Latham's addition does not contain a description of the property upon which the addition was laid out and that hence it would be impossible for an engineer to locate and identify the lots and lines of the addition and that they cannot be designated without the aid of a legal description. On cross-examination he testified that there is sufficient data to locate the property but that it is inconsistent, and that if he took that data and laid off the addition none of the houses would be on the right lots and as the measurements are in excess of what the actual territory is, they are inconsistent and absolutely "incompetent." The record of the legal survey made by Bridge in 1905, contains an affidavit of Towle, which was read in evidence to the admissibility of which no question is presented, in which affidavit he locates the south line of lot 6 as being 100 feet from the north line of Russell street as the same is used and occupied, thus allowing a width of fifty feet each for lots 7 and 8. Towle further states in his affidavit which was made in 1900, that he has a distinct recollection of stakes set at all corners of each lot in said addition and particularly remembers

this fact with reference to the lot line between lots 6 and 7 that he sold lot 6 to one Kate Hazzard on February 4, 1882, and conveyed the same to her by warranty deed; that the stakes then stood on the line between lots 6 and 7 as they were originally placed by the surveyor who laid out and subdivided the lots and that the stakes had at all times been recognized as the proper dividing line between these lots; that a fence was erected within a few inches of said line on lot 6; that he knew of the fence being erected and always believed and conceded that it was erected on the south line of lot 6; that he knew of the sale of lot 6 to one John Boos and knew of the erection of the brick block thereon; that he passed said lot several times daily during the construction of the brick block; that affiant constructed a frame cottage on the north side of lot 7 within about a foot of the brick block and at that time had occasion to ascertain the dividing line between lots 6 and 7 and that he and his co-owner, Young, always recognized and conceded that the brick building was wholly on lot 6 and did not extend onto any part of lot 7. He further states that the affidavit of one Hazzard which was contained in said survey and read in evidence, no objection to its admissibility being presented, is true and in accordance with the facts as affiant then recollected them. He further says that he and his co-owner, Young, owned lots 7 and 8 until three years before the date of the affidavit, but that they, at the time of the making of the affidavit, have no further interest in said addition. The affidavit of Hazzard was made in 1900, and he therein states that he purchased lots 5 and 6 in 1882, from Towle; that at that said time said addition was low land and covered with brush and entirely unimproved; that he immediately fenced the north line of lot 5 and the east line along the alley of lots 5 and 6 and the south line of lot 6 as well as the west line fronting on Hohman road, now

called Hohman street. That at that time the original stakes for the lots were still standing in plain sight and the fence was built on the line marked by the original stakes. That on the date of making the affidavit he reviewed the premises and identified and recognized the fence; that it is now standing in the original position; that in 1884 or 1885, he sold the north forty feet of lot 5 to Louis E. Hohman and after the sale erected a partition fence between his north and Hohman's south line of said lot as shown by the original stakes; that a part of said fence remained standing in the original position at the date of the affidavit. That in 1883 or 1884 he erected a two-story frame building and placed the same on the north line of lot 6 as shown by the original stakes and that said building still stood at the date of the affidavit in the same position as originally erected. That later affiant erected a one-story frame store building on the remaining ten feet of lot 5. That before erecting said building he sawed down the partition fence of the length of said building and that on the day he made the affidavit he examined said fence line and found the posts still standing that had been sawed off by him when said fence was razed. That on the day of making the affidavit he examined the fence on the south line of lot 6 and identified it as the original fence erected by him and that the fence was placed on the line shown by the original lot stakes. That in 1889 he sold lot 6 and the south ten feet of lot 5 to John Boos and that said Boos erected on the south part of lot 6 a two-story brick block and in the erection of said building the south fence was torn down from Hohman street to the east end of said building, for the reason that no fence was necessary where the building stood, but that the fence still stands in the original position from the east end of the building to the alley. That the affiant was particular to locate the original stakes of said lots in placing his fence so as to

be within his rights. In the negotiations and sale of this property by the Bunnells to the Standard Oil Company there was nothing said regarding any question about the boundaries of this property and Mr. Bunnell testified that there was nothing known about it at that time, so far as he knew.

The question involved in this case is as to whether there was such a statutory dedication of Russell street with reference to Latham's addition and acceptance thereof by appellant as to establish its width at sixty feet, or thirty feet north of the center line, or as to whether appellant city had ever by any act accepted the dedication of such street out of the Latham's addition territory, in any greater width than twenty-three feet thereby leaving seven feet in width unused for street purposes, which seven feet in width along the north side of said street was unoccupied by the city, but occupied, claimed and used for private purposes by the owners of the lots abutting on the north side of said Russell street, and whether for the purposes of determining this question the plat of Latham's addition is so ambiguous and erroneous, and the blocks, streets and alleys in the dimensions therein given are so impossible on the land laid out for such addition as to justify parol evidence for the purpose of determining the intention of the dedicator, his purchasers and the appellant city.

Appellant earnestly contends that the trial court erred in admitting oral evidence with reference to the present improvements of Russell street, and the present

1. occupancy of the same as such street to show nonuser and failure of acceptance, and, as appellant says, partial abandonment by the city of Russell street as indicated on the plat of Latham's addition, contending that at the time such evidence was offered, it clearly appeared by the recorded plat that there was a statutory dedication of Russell street with reference to Lath-

am's addition, and that parol evidence was not admissible to show a nonuser or nonacceptance of such street or any part thereof. Appellant cites numerous Indiana authorities to sustain its contention, and which would accomplish that purpose if we assume that the dedication of Russell street was a statutory dedication—that is, a dedication by a plat which conforms to the requirements of the statute. Section 3374 R. S. 1881, in force at the time of the record of the plat here involved, provided that there should be "recorded * * * a correct copy of the plat * * * with the public grounds, streets, lanes and alleys, with their respective widths *properly marked* (our italics) the lots regularly numbered, and the size of the lots marked by reference to the plat." But it is admitted by the parties to this appeal that the plat of Latham's addition is erroneous, ambiguous, and its dimensions impossible within the territory actually embraced. Appellant's authorities do not contemplate such a condition. No question is presented by such authorities as to an improperly marked plat, as to mistakes in marking, and as to impossible dimensions. It is fundamental that parol evidence is, as a general rule, admissible for the purpose of showing that by reason of a mistake a written instrument does not truly express the intention of the parties, and to show what that intention was. *Hileman* v. *Wright* (1857), 9 Ind. 126; *Jones* v. *Sweet* (1881), 77 Ind. 187; *Andrews* v. *Andrews* (1859), 12 Ind. 348; *The Citizens National Bank* v. *Judy* (1896), 146 Ind. 322, 340, 43 N. E. 259; *Wieneke* v. *Deputy* (1903), 31 Ind. App. 621, 68 N. E. 921; *Equitable Trust Company* v. *Milligan* (1903), 31 Ind. App. 20, 65 N. E. 1044.

2. That there was an error in the plat as applied to the land platted is apparent, for the dimensions of the land platted are not as great as the combined dimensions of the lots and the streets and alleys,

and it therefore becomes the duty of the court to determine the intention of the parties, the dedicator and the public as to where the loss must fall, and to this end parol evidence of the surrounding circumstances, and of the acts of the parties, at the time and thereafter, giving practical construction to the plat, is admissible. In addition to the authorities above, see as authorities in which parol evidence was heard, *Steinauer* v. *City of Tell City* (1897), 146 Ind. 490, 45 N. E. 1056; *Cleveland, etc., R. Co.* v. *Christie* (1912), 178 Ind. 691, 100 N. E. 299; *Cincinnati, etc., R. Co.* v. *Cleveland, etc., R. Co.* (1919), 188 Ind. 230, 123 N. E. 1; *City of Indianapolis* v. *Board of Church Extension* (1902), 28 Ind. App. 319, 62 N. E. 715.

In *Cincinnati, etc., R. Co.* v. *Cleveland, etc., R. Co.,* *supra,* there was involved the width of a right-of-way, and the court says: "In a case like this, where the width of a right of way may be of some importance or is questioned, and the instrument or deed thereto does not fix the width, the contemporaneous declarations and acts of the parties with reference to the same, as also subsequent acts if performed before a controversy arises, are admissible to fix such width. * * * Such declarations or acts are admitted on the theory that they tend to show how the parties understood the contract and may furnish a practical construction of it."

The rule here stated must control, not only as to the admissibility of parol evidence, but as well as to the intention of the parties in interest at the time and 3. thereafter before any controversy arose. To constitute a dedication, there should be a clear intention to devote the ground claimed to have been dedicated to the use of the public. *The President, etc.,* v. *City of Indianapolis* (1859), 12 Ind. 620, 623. Not only must there be a clear intention, but it must be shown that there was an acceptance of such dedication

by the public, or the proper local authorities.   *Westfall* v. *Hunt* (1856), 8 Ind. 174; *Cleveland, etc., R. Co.* v. *Christie, supra; City of Indianapolis* v. *Board of Church Extension, supra; Steinauer* v. *City of Tell City, supra.* In the City of Indianapolis case, there was involved the width of a street, and in the course of its opinion, the court says:   "So far as the record shows, the city of Indianapolis never claimed this ten-foot strip as a part of the highway until after this litigation was commenced.   The city never needed it for a street, and does not now.   The roadway and sidewalks are permanently improved to the width of eight feet, as shown by the original plat.   It is unreasonable to believe that, if by this litigation, it should be determined that this ten-foot strip was a part of Massachusetts avenue, the city would tear up the permanent improvements it has caused to be made, and widen the avenue at this point, for a distance of about sixty-seven feet.   We are clearly of the opinion, in the light of the facts, that the city never accepted a dedication of a ninety-foot roadway in front of this property, and the validity of the dedication depends upon an acceptance.   *   *   *   A dedication of a public highway may be accepted in part and relinquished in part.   So, if it be conceded for the argument, that Wood dedicated to the public a street ninety feet wide, it does not necessarily follow that the entire width had to be accepted.   There may be an acceptance and appropriation in part, and not for the whole.   A piece of land may be dedicated to public use, and yet the public convenience may not require the whole of it.   In such event, the part needed may be accepted and appropriated, and the residue, by common consent, be relinquished."

In the Steinauer case, the controversy was over a triangular lot at the intersection of two streets, and the court, stating the facts, says:   "This strip has not been

in any way improved as a street. Neither has it been traveled nor used to any extent, as the finding discloses. There being an absence of user sufficient to constitute an acceptance, there must be proof of an acceptance on the part of the public authorities of Tell City by some formal act of theirs, showing an unmistakable intention to accept the land dedicated, and for the purposes for which it was intended by the dedicator to be used. *People* v. *Underhill, supra.* There seems to be virtually an entire absence of any such facts. Considering the acts of appellant, it does not appear that he himself recognized this ground as having been dedicated as a public street. * * * Neither of the parties to this controversy, appellant nor the city, appear to have treated the strip now in dispute as a public street prior to the time the controversy arose."

On these facts the court held, with the trial court, that there was no acceptance. In the instant case, the respective lots were measured on the ground to correspond with the marking on the plat, and stakes were driven at the corners. The lots were sold and the purchasers took possession of the same with reference to these stakes, and constructed substantial business houses or dwellings thereon, all with reference to the original locations. These locations left only the twenty-three-foot strip of the tract of land platted for Russell street. The city took possession of said strip, and no more, and made permanent improvements thereon, in which the lot owners, being the part of the public immediately interested, acquiesced. Clearly, the maker of the plat intended that the lots on Hohman street should be each fifty feet wide, and, so making them, he could dedicate but the remaining twenty-three feet to the public for Russell street. The public could not, and did not, expect more. The decision of the court is sus-

tained by the evidence, and is not contrary to law. The court did not err in overruling appellant's motion for a new trial. Judgment affirmed.