MICHIGAN CENTRAL RAILROAD COMPANY *v.*
CITY OF MICHIGAN CITY ET AL.

[No. 13,970.   Filed February 6, 1930.   Rehearing denied May 4,
1930.   Transfer denied June 9, 1932.]

*Harry B. Tuthill, Walter C. Williams, Nevile V. Williams, Samuel D. Miller* and *Sidney S. Miller,* for appellant.

*Worth W. Pepple, Louis E. Kunkel, Louis H. Krueger, Theron F. Miller, T. C. Mullen* and *Paul A. Krueger,* for appellees.

LOCKYEAR, J.—The appellant is an inter and intrastate common carrier and owns a right of way through Michigan City, over which it has laid 10 railroad tracks in an easterly and westerly direction. Immediately south of the appellant's right of way and abutting it, lies the right of way of the New York, Chicago and St. Louis Railroad Company.

In the eastern suburbs of said city is what is known as Mentz Crossing, or Mentz Alley, and in late years has been designated as "Mentz Court," which crosses the right of way of both railroad companies at right angles. The appellant filed a complaint in the court below, the prayer of which is that said Mentz Crossing be decreed the property of the appellant and that the appellee be decreed to have no right or claim, possessory or otherwise thereto, and it be decreed not to be a place for travel by anyone, that all appellees be estopped from asserting any interest or possession therein or thereof, and for a mandatory and perpetual injunction against all in favor of the appellant.

The appellee Michigan City filed an answer in general denial and a cross-complaint, alleging Mentz Court to be a public way and asked an injunction against the appellant closing the way. The other appellees own real estate in the neighborhood lying north of the right of way of the appellant, and filed answers in general denial.

The case comes to us on the assignment of error in the first, second, third, fourth and sixth conclusions of law. There are no objections to the court's finding of facts. The finding of facts that are controlling on the issues involved are in substance as follows: Bigelow and Winship's Addition was platted and the plat recorded October 4, 1858, and covers the whole northwest quarter of the northwest quarter of section 28, township 38 north, range 4 west, LaPorte County and no more; the west line of Mentz Crossing as far north as the north line of plaintiff's right of way and railroad yards in Michigan City abuts the east line of said addition and is wholly in the northeast quarter of the northwest quarter of said section 28; there is no street, alley or other thoroughfare designated or shown on said plat on the north, south or east line of said addition or

abutting said addition; there was no street on the north, south, or east line of said addition abutting the same.

Washington Park Addition to Michigan City was platted and recorded September 29, 1891, in the proper records of LaPorte County; its west boundary is the west line of section 21; its south line is the south line of section 21 and the north line of section 28; the south line extends eastwardly from the west line of section 21, 1,057.5 feet to the east line of what is on the plat designated as Miller Street, but what is now Lake Avenue and which Lake Avenue is its eastern boundary.

The east line of Washington Park Addition, including the east line of Lake Avenue is 262.5 feet west of the west line of Mentz Crossing, if prolonged due north to the section line; there are no east and west, north and south streets in the southeast quarter of the southwest quarter of said section 21 until the prolongation of Blaine Street; there is no east and west street between Winship and Bigelow's Addition on the south and Washington Park Addition on the north as shown on said plats.

The time said plat was recorded plaintiff's right of way ran easterly and westerly through the center of Bigelow and Winship's Addition; the land to the east has always remained in acreage.

On February 22, 1862, Charles S. Winship, then the owner thereof, for $150, executed to Fred Mentz his warranty deed for the lands which lie wholly east and abut the north tier of lots of Bigelow and Winship's Addition, commencing 70 rods east of the northwest corner of section 28, running thence east 20 rods, south to the line of the Michigan Central Railroad Company, westwardly along the line of said railroad company to the east line of Bigelow and Winship's Addition, thence north along said line to the place of beginning in section 28 township 38 range 4 west, and in said

grant was the agreement that Mentz agrees to give John Schneider and Mathias Jochim the privilege of crossing said land with teams or otherwise from the north line of said railroad to such place as said Mentz shall select; also a strip of land one rod wide, commencing at the south line of the Michigan Central Railroad and east line of Bigelow and Winship's Addition which strip is to be kept open and unobstructed for road purposes.

Afterwards, on July 26, 1872, Frederick Mentz and wife, then owners and in possession, conveyed to Michigan Central Railroad Company lands commencing 229 feet south of a point on the north line of section 28, township 38, range 4 west, 1,155 feet west of the northeast corner of the northwest quarter of said section 28, thence westwardly parallel with and 101 feet north of the north line of the right of way of the Michigan Central Railroad Company 330 feet, thence south 101 feet to the north line of said right of way, thence eastwardly along said north line 330 feet, thence north 10 feet to place of beginning; the same being for additional right of way to and for said railroad company. In said conveyance was the further limitation: "Said company agreeing that the crossing over the tracks of said company known as Mentz Crossing shall be kept open through said land as other street crossings are kept open." Deed executed September 12, 1872. (See map for detailed information.)

Supplementing said grant from Mentz to plaintiff was the writing afterwards found among the effects of said Mentz and subsequent to his death. The writing is signed by Andrew L. Osborn, general attorney for the plaintiff, dated July 26, 1872, and is as follows: "Fred Mentz has conveyed to the Michigan Central Railroad Company by deed of this date certain real estate in Michigan Township LaPorte County, Indiana, being a strip 100 feet wide on the north side of the road of said

company and as a part of this transaction it is agreed that a road crossing shall be kept open as specified in said deed. Now the said company by A. L. Osborn, its attorney, agrees that said crossing may be kept open as streets are kept open in Michigan City as specified in same deed."

The facts found by the court show that in successive conveyances to other grantees and their assigns to lands both north and south of appellant's right of way were similar stipulations concerning the use and dedication of said Mentz Alley to the public's use as is found in the deed to appellant in 1872.

From 1872 until 1925 said Mentz Crossing has been kept open by the company as other crossings have been kept open, and during all of said time the company has maintained a line of tracks over said crossing and longitudinally within its right of way of 10 or more railroad tracks. Said company by ballast, cinders and planks has maintained said crossing as a railroad crossing in a reasonably safe condition and as other railroad crossings of a similar kind have been kept and maintained. During all of said period from 1872 to 1925 said Mentz Crossing has been used by the public in crossing the right of way of the Michigan Central Railroad Company, and the use of Mentz Alley by the public was open, notorious, continuous and uninterrupted during all the time and without objection on the part of the plaintiff, and frequently during said period plaintiff cut off or separated its trains standing over said crossing in order to avoid obstructing the free use of said crossing by the public.

Said crossing at the time of the execution of the deed by Mentz to plaintiff in 1872 extended across plaintiff's tracks to the south line of the land therein conveyed and no farther. Prior thereto said Mentz had constructed an old road which ran in a northeasterly

direction from the north line of the company's right of way as it then existed to his dwelling in the southeast corner of the southeast quarter of the southwest fractional quarter of section 21 and said Mentz Crossing was continued in a northeasterly direction from the north line of plaintiff's then right of way across the strip of land purchased at said time by plaintiff from said Mentz and said way first established has been and continuously thereafter has extended across the Michigan Central Railroad Company's right of way in a north and south direction to the north line of the old right of way, thence diagonally northeast to said dwelling and said way as therefore constructed has been the way used by said Mentz and the general public from 1872 to 1925.

Said strip of land known as Mentz Crossing is 16 and one-half feet and no more in width and extends across the tracks and yards of the plaintiff company for a distance, to-wit, 175 feet.

Immediately south of plaintiff's right of way and abutting it lies that of the New York, Chicago and St. Louis Railroad Company, in which said company and its predecessors in title for more than 40 years have and now maintain five tracks all of which are crossed by Mentz Crossing and are constantly in use for passenger and freight traffic.

Plaintiff company from 1886 to 1896 maintained a fence along its north line of right of way in the east half of the southwest quarter of section 28, which fence was maintained by said company on the dividing line between plaintiff's right of way and the lands north thereof, all of which belonged to Fred Mentz and his successors in title, and at the place where said northeastern extension of said Mentz Crossing crosses said dividing line, said Mentz and his successors in title maintained a gate to prevent cattle from getting upon

plaintiff's right of way; afterwards from the spring of 1907 until 1909, said plaintiff company maintained a fence where said fence had been and at said place where said gate had been occasionally four bars were placed across said Mentz Crossing by someone unknown as far as the evidence discloses.

All parties to this action derive title from Fred Mentz.

All of the work of keeping Mentz Alley fit and suitable for crossing within the north and south boundary lines of plaintiff's right of way and railroad yards was performed by plaintiff at its own expense; all work of keeping said way passable north of the north line of plaintiff's right of way was done by Fred Mentz and his successors in title; no part thereof was ever done or performed under the order of the city or its officers or agents or at its expense.

The court stated as conclusions of law on the special finding of facts the following: (1) The acceptance of the deed of July 28, 1872, from Fred Mentz and wife to the Michigan Central Railroad Company with the reservation therein contained and the subsequent action of said railroad company relative to said Mentz Alley, unequivocally dedicated it to the public as a public highway in Michigan City, Indiana; (2) the citizens of Michigan City, Indiana, and the public generally acted upon such dedication of said Mentz Alley as a public highway and accepted the same by the continuous and uninterrupted use thereof from 1872 to 1925; (3) said Mentz Alley has never been legally vacated and is now a public highway in the city of Michigan City, Indiana; (4) that said city of Michigan City, Indiana, is not estopped from asserting the public character of said Mentz Alley and taking such steps as may be reasonably necessary to establish the same; (5) that none of the defendants is entitled to damages as the result of the closing of said Mentz Alley by the plaintiff; (6)

that the defendants are entitled to recover their costs herein laid out and expended.

The Acts of 1905 p. 525, being §8709 Burns 1926, reads as follows: "All highways heretofore laid out according to law, or used as such for twenty years or more, shall continue as located and as of their original width, respectively, until changed according to law."

The use for 20 years with the knowledge and consent of the owner is a dedication; or for such length of time thereby raising the presumption of dedication by the owner.

*Hart* v. *Trustees* (1860), 15 Ind. 226; *Bidinger* v. *Bishop* (1881), 76 Ind. 244; *Waltman* v. *Rund* (1886), 109 Ind. 366, 10 N. E. 117.

A road that has been used by the public uninterruptedly for 20 years with the knowledge and consent of the owner of the soil becomes a public highway. *Hayes* v. *State* (1856), 8 Ind. 425; *Hart* v. *Trustees, supra; State* v. *Hill* (1858), 10 Ind. 219; *Holcraf* v. *King* (1865), 25 Ind. 352; *Summers* v. *State* (1875), 51 Ind. 201.

In Elliott, Roads and Streets (2d ed.) p. 164, the author says: "The municipal corporation consists of the inhabitants and not the officers; the officers are, in truth, nothing more than the agents of the corporation. The inhabitants, therefore, stand to the officers as principals, and if the principals have, by their conduct, accepted the dedication, it is of no great importance that the agents have taken no action in the matter. The inhabitants of a locality having by long continued use treated the way as a public one, they make it such without the intervention of those who derive their authority from them. Creating towns, cities and other public corporations, is, 'but the investing the people of the locality with the government thereof,' and they may themselves exercise the powers of government

of highways quite as effectually by continued use as by any other method."

The weight of authority is that long continued use by the public is sufficient evidence of acceptance. *Ross* v. *Thompson* (1881), 78 Ind. 90; *German Bank* v. *Brose* (1903), 32 Ind. App. 77, 69 N. E. 300.

Highways established by use become streets of a city or town when they are annexed thereto. *Brown* v. *Hines* (1896), 16 Ind. App. 1, 44 N. E. 655.

When the use of a highway is interrupted by the use of gates or bars, which evidences the intention of the owner to exclude the public from its uninterrupted use, the prescriptive right is destroyed, and the right must begin again to run from the date that the interruption is abated, but if the way is dedicated by positive dedication as by deed or written instrument, this rule would not apply. *Shellhouse* v. *State* (1886), 110 Ind. 509, 11 N. E. 484.

It has been held that, where the owner of lands from which an alley runs, sold the lots with reference to this alley as a public highway, it amounted to a dedication thereof to the public. *Fossion* v. *Landry* (1889), 123 Ind. 136, 24 N. E. 96.

In a suit to enjoin a city from using a strip of ground, the complaint must not only show that there has been no grant of the land for a street or highway, but also that there has been no implied dedication. *Faust* v. *City of Huntington* (1883), 91 Ind. 493, and in this case Judge Elliot says: "If a landowner, by open and visible acts, unequivocally indicates to the public and to citizens that he intended to, and did, throw open a street to the public, and the citizens and the public have acted upon the faith that there was a dedication, the law will treat the acts of the owner as con-

stituting an irrevocable dedication. In such cases there need be no grant."

In *City of Indianapolis* v. *Kingsbury* (1884), 101 Ind. 201, 51 Am. Rep. 741, it is held the purchasers of lots have a right of all streets marked on the plat, by which they purchased, kept open as streets, and their rights are not confined to the parts of the streets in front of the lots purchased by them. The same case holds that a private way, no matter how long used by the public, cannot be transferred into a public way without the consent of the owner, but when the owner consents and the public accepts, the change may be made.

We are not confronted with the evidence in this case, but simply with the finding of facts by the court. The court here says in unequivocal language in finding of fact No. 26: "And said way heretofore constructed has been the way used by said Mentz and the general public from 1872 to 1925." The finding of the court that it is a public way is not based upon mere user, but upon a positive dedication, where, back in 1862, Fred Mentz obtained a deed from Charles Winship in which are the words, "Also a strip of land one rod wide to be kept open and unobstructed for road purposes," and in finding of facts No. 12, the deed to the appellant stipulated that the crossing over the tracks of said railroad company known as Mentz Crossing shall be kept open, as other streets are kept open for the use of the public without restrictions so long as it may be necessary and shall not be closed until a new street for the public's use and convenience is opened. There is no finding of facts that any new street conveniently near has been opened.

We are of the opinion that the court's conclusions of law are amply supported by the finding of facts.

Judgment affirmed.