IRION v. NELSON.

No. 34390.    Oct. 14, 1952.

*249 P. 2d 107.*

gates or other obstructions across a road traversing defendant's farm. After a hearing the trial court rendered judgment granting the injunction, but permitting the use of gates for limited times, and defining size of the road, depth of ditches, etc. From this judgment defendant has appealed and plaintiff files cross-appeal. For convenience the parties will be referred to as they appeared in the trial court.

From the record it appears that the plaintiff and the defendant own adjoining farms, the defendant's place being just north of plaintiff's; that each of these farms is bounded on the west by a section line, but that no public highway in use follows the section line; that near the northwest corner of defendant's place a road, which had followed said section line for a short distance, branches off to the southeast and traverses defendant's farm, down to plaintiff's place, which it enters, said road now ending at or about plaintiff's house; that this road formerly went on to Mangum and was at that time in rather general use, but that for many years it has not extended beyond plaintiff's house, being used only by those going to and from that place; and that said road in traversing defendant's farm passes over privately owned property. It further appears that defendant's land was open and unfenced until shortly after the turn of the century when it was "broke out" and was fenced; that gates were constructed across the said road which traversed defendant's farm, at the point of entrance on the northwest and the point of exit on the south, which gates were maintained from time to time thereafter and which were sometimes kept closed (particularly when cattle were being pastured) and sometimes left open; that these gates were not of solid construction, but were made of wire, attached to posts, and could be let down and thrown to one side to open the gap; and that when the gates were closed it was necessary for anyone traveling the road to open and close same.

Hollis Arnett, Mangum, and Tolbert & Gillespie, Hobart, for plaintiff in error.

W. B. Garrett, Mangum, for defendant in error.

PER CURIAM. Dock Nelson (Vestal Taylor Nelson) filed this suit against Emanuel Irion to obtain an injunction against the maintenance by Irion of

Plaintiff contends that the public had used the road for something like 50 years, and that by virtue thereof a highway by prescription had been acquired. Defendant admits the long use of the road, but says that such use was permissive, and not adverse, and accordingly did not ripen into a highway by prescription.

Although defendant demurred to the evidence at the close of plaintiff's case in chief and moved for judgment, such demurrer and motion were not renewed at the conclusion of all the evidence. Because of this, plaintiff contends that this court cannot now review the evidence. It has been frequently held, however, that in a case of equitable cognizance, it is the province and duty of the Supreme Court on appeal to review and weigh the evidence. Hunter v. Murphy et. al., 124 Okla. 207, 255 P. 561; Galloway v. Loffland, 144 Okla. 176, 289 P. 774; Hudson v. Reaves, 194 Okla. 178, 147 P. 2d 986. This is true, even though no demurrer to the evidence or motion for judgment thereon was made by the appealing party. Saied v. Kuori, 146 Okla. 51, 293 P. 245; Schwabacher v. Jennings, 118 Okla. 51, 246 P. 588.

The principal question for determination is whether a highway has been acquired by prescription over the privately owned farm of defendant. The obtaining of an easement in this way is not looked upon in favor by the courts, and it is essential that every legal element required to constitute prescription concur before it will be upheld. 28 C.J.S. 645. We would do well, therefore, to consider some of the elements necessary for the acquisition of the right.

In 25 Am. Jur. 347-348, the rule is thus stated:

"In order to constitute a highway by prescription as against the owner of the property over which it is claimed, the use, as in other cases generally, must have been adverse, continuous, and exclusive throughout the prescriptive period. If the use of a way is interrupted, prescription is annihilated, and must begin again, and any unambiguous act by the owner, such as closing the way at night, or erecting gates or bars which evinces his intention to exclude the public from its uninterrupted use, destroys the prescriptive right.."

The burden is upon one claiming an easement clearly to establish such right. Catterall v. Pulis, 137 Okla. 86, 278 P. 292; Board of County Commissioners of Jackson County v. Owen, 196 Okla. 538, 166 P. 2d 766. However, the burden of proof sometimes shifts to the opposite party. In 28 C.J.S. 736, it is said·

" * * * The general rule is that proof of an open, notorious, continuous and uninterrupted user for the prescriptive period, without evidence to explain how it began, raises a presumption that it was adverse and under a claim of right, or, as is sometimes stated, raises a presumption of a grant, and casts on the owner of the servient tenement the burden of showing that the user was permissive or by virtue of some license, indulgence, or agreement, inconsistent with the right claimed."

This in substance was our holding in Friend v. Holcombe, 196 Okla. 111, 162 P. 2d 1008.

A use by the public of a road over privately owned land with the permission of the owner is not adverse, and cannot give rise to an easement by prescription, no matter how long continued. Thomas v. Morgan, 113 Okla. 212, 240 P. 735, 43 A.L.R. 934; City of Hollis v. Gould, 190 Okla. 335, 123 P. 2d 241; Friend v. Holcombe, supra; Board of County Commissioners of Jackson County v. Owen, supra. It follows, therefore, that if the use of the road in question was permissive, no highway by prescription was acquired.

From the testimony it appears that in traversing the land now owned by defendant, the road in question originally passed through unfenced grassland and open prairie country and was in use before the year 1900. This seems to be clearly established by the testimony of plaintiff's witnesses. The

evidence in the case is further to the effect that the beginning of cultivation of the land, the erection of any fences, gates, etc., occurred sometime after the turn of the century.

In speaking of the rule that an open, continuous use of land for the prescriptive period will be presumed to be under claim of right, we said in Friend v. Holcombe, supra:

"This rule, however, appears to be elastic and the proof of adverse user, to create prescriptive right to passway that traverses uninclosed lands, must be much more convincing than proof required to establish same right when passway traverses clear or inclosed land. Evans v. Bullock, 260 Ky. 214, 84 S.W. 2d 26. The reason supporting this latter rule is that few owners of uninclosed land pay any attention to the travel over it, but when there is much travel over inclosed or cultivated land it is, as a rule, a serious inconvenience as well as a source of annoyance to the owner and as to the latter status it will be presumed that the use was with the knowledge of the owner, and that if he permits its use for the requisite period without attempting to interfere, his action will be taken as his implied consent thereto, while the mere fact that he permits the public to travel at liberty through unimproved lands might not raise any presumption of a grant."

The evidence in the present case fails to show that the defendant or the former owners of his land ever made any objection to the use of the road over said land. Our remarks in Friend v. Holcombe, supra, in speaking of a passway over grazing lands in Osage county are therefore applicable to the road in question as it originally existed. There we said:

"In the present case the evidence disclosed that no objection was ever made by the defendants or their predecessors in title to people crossing their lands. No doubt they and their predecessors in title were following the 'good neighbor' policy, . . . . and defendants' attention was never called to the fact that plaintiff or others using the roadway were claiming such use as a

right or adversely to defendants, nor was there any testimony in the record that would impute to defendants that the use by plaintiff and others was adverse."

We think, therefore, that under the evidence of this case, the original use of the road was not hostile but by permission of the owners. That being true, when, if at all, did it become adverse? The rule seems to be well established that where the use was originally permissive, the burden of proving that such permissive use had ceased and had become hostile in character is thrown upon the party asserting same. In 17 Am. Jur. 981-982, it is said:

"If the use originates by permission or license and an easement by prescription is claimed, the burden of proving that the permissive use had ceased and that the use for the necessary period had been adverse under claim of right is on the party asserting the fact of adverse user, and in case of doubt, such fact will be resolved against him."

In considering this question, the Supreme Court of Iowa in Dugan v. Zurmuehlen, 203 Iowa 1114, 211 N.W. 986, said:

"Where the original use of a strip of land by the public as a highway was permissive, there is no presumption that long-continued use or possession thereof was under a claim of adverse possession."

See, also, Baynard v. Every Evening Printing Co., 9 Del. Ch. 127, 77 Atl. 885.

Plaintiff's theory apparently is that the use of the road for many years creates the presumption that such use was adverse. Since no evidence of acts constituting actual hostile use here appears, this presumption is relied upon by plaintiff as meeting the burden of proof originally cast upon him and shifting it to defendant. In view of the circumstances already pointed out, we do not think that such presumption of adverse user arose. However, if it did, it was subject to rebuttal. It thus becomes important to consider the evi-

dence as a whole, to determine whether the use of this road for approximately half a century was hostile in character (for as long as fifteen years at any given time), or was permissive.

The clear weight of the evidence is to the effect that shortly after this farm was put in cultivation and fenced, although the road continued to run through same and to be used by the public, gates were constructed and maintained at the points of entrance and exit. There was some testimony to the contrary, but most of such opposing evidence was negative in character; namely, that the witnesses so testifying did not *see* any gates; and some of them qualified this further by stating that the gates might have been there without their observing them. This is perfectly possible, since the gates were of flimsy wire and post construction, which might easily pass unnoticed by the traveler when thrown to one side.

Certain witnesses for the plaintiff testified that this was an "open road" or that the road was "open" or "open to the public," but some of these also testified to the existence of the gates. We think that this testimony fails to meet or overcome the very strong evidence of defendant, corroborated by some of plaintiff's witnesses, that such gates were maintained and that at certain times of the year they were kept closed.

Numerous witnesses testified to the presence of the gates, their evidence together covering substantially the entire period since shortly after 1900. We are impressed by the fact that of the witnesses testifying to the presence or the absence of gates prior to the time that plaintiff and defendant acquired their respective farms, practically all who had lived on either of the places or who had had close relatives there, testified to the presence of the gates and to the fact that they were kept closed when the occupant was pasturing livestock. It is reasonable to think that one who lived on a place would be much more apt to note and remember its

physical equipment than the casual traveler.

While the maintenance of gates across a road through a farm may not be conclusive, this is evidence to be considered in determining whether the use of the road was adverse or with the permission of the owner.

In Porter v. Huff, 162 Ark. 52, 257 S. W. 393, it is said:

"When appellee inclosed his land and placed gates across the road, it was notice to the public that thereafter they were passing through the land by permission and not by right."

The Supreme Court of Arkansas reaffirmed this principle in the case of Pierce v. Jones, 207 Ark. 139, 179 S.W. 2d 454.

In Michigan Cent. R. Co. v. Michigan City, 94 Ind. App. 481, 169 N.E. 873, the Appellate Court said:

"When the use of a highway is interrupted by the use of gates or bars, which evidences the intention of the owner to exclude the public from its uninterrupted use, the prescriptive right is destroyed, and the right must begin again to run from the date that the interruption is abated. . . ."

So, in Williams v. Prather, 239 Ala. 524, 196 So. 118, the Supreme Court of Alabama said:

"It must be conceded that obstructions placed across a road, as indicated by this proof, is a strong indication that the use by others is permissive only, and the erection of a gate across a road tends to evidence an intention on the part of the owner to assume and assert ownership and possession of the land over which the road runs."

See, also, Maynard v. Bara, 96 Mont. 302, 30 P. 2d 93.

Under the evidence we are unable to find any consecutive period of as much as fifteen years in which the gates were not used. On the contrary, the clear weight of the evidence is that during substantially all of the time involved, since the fencing of the land,

the owners or tenants made use of gates across the road, although during only portions of the year.

The road in question was used as a turn-row in cultivating the land now owned by defendant. How long this practice was in operation is not disclosed, although the testimony of plaintiff's witness, Gov. Moore, shows that it was so used at least as early as 1927. This would indicate that the road was not used exclusively as a road. Board of County Commissioners of Jackson County v. Owen, supra.

The case of Seaman v. Chestnut, 180 Okla. 582, 71 P. 2d 965, relied upon by plaintiff, is not determinative here. This court there said, "There was an adverse claim of color of right by virtue of the agreement. The use thereof was continuous, and uninterrupted, and for a sufficient period of time." These facts do not fit the present case.

We are of the opinion and so hold that the judgment of the trial court in finding that a highway had been acquired over defendant's land by prescription is clearly against the weight of the evidence. The plaintiff, however, pleaded and adduced testimony to the effect that the road in question was the only means of ingress to and egress from his land, but failed to plead all facts showing that a private way of necessity existed. It may be that such a way in fact exists. If it does not, then the plaintiff may still be afforded a remedy, since Title 27, §6 O.S.A. extends to individuals the right of eminent domain for private ways of necessity where the essential facts exist. Because of the conclusions reached, the contention of the plaintiff that the trial court erred in placing limitations upon the use of the road by the public becomes moot and the cross-appeal is denied.

This cause is, therefore, reversed and remanded, with directions to set aside the judgment which was rendered in favor of plaintiff and against defendant, to grant a new trial herein, and

to permit the respective parties to file amended pleadings.

This Court acknowledges the services of Attorneys B. W. Griffith, Fenelon Boesche, and Alfred B. Knight, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, V. C. J., and WELCH, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.