### GRIZZARD v. CITY OF LEESBURG, et al.
No. 111.
Circuit Court, Lake County.
March 9, 1970.

Henry L. Pringle, Leesburg, for the plaintiff.

Geoffrey B. Dobson, State Road Department, Tallahassee, and G. G. Oldham, Leesburg, for the defendants.

W. TROY HALL, Jr., Circuit Judge.

*Findings of fact and conclusions of law, March 9, 1970:* This case stems from three things —

    1. A deed to the plaintiff which describes his property as so much of a described parcel of ground lying south of a described road;

    2. The fact that there is no recorded deed, plat or otherwise to show the width of the road at the area in question;

60

3.  That the state road department at some uncertain time placed what is the usual, if not the official, state road marker at a point 50 feet distant from the center line of the road. The plaintiff contends that the actual boundary is 30 feet from the center line. The center line, the true (?) boundary, and the marker are shown on a map of survey, attached to the complaint, which was made in 1948. The suit was brought in January of 1967.

The complaint prayed for a mandatory injunction requiring the removal of the marker or requiring the defendant to condemn the 20 foot strip, and to judicially declare the location of the south line of the road. Obviously the last request must first be considered and determined.

The cause came before the court on motions of all parties for summary final judgment. Default judgment had been entered against the defendant Lake County for failure to file defenses so at this point the defendants are the state road department and the city of Leesburg.

The court is keenly aware of the advantages and dangers of deciding cases by summary judgment. The mere fact that both plaintiff and defendants filed such motions does not preclude the possibility of there being a genuine issue as to a material fact. All it means is that each party thinks his own undisputed position is conclusive and that disputed facts are not material. Consequently the court has examined the pleadings, affidavits, interrogatories and exhibits with great care in order to discover if there is actually any genuine issue as to any material fact. The court concludes that there is no such issue and that the case should properly be decided on these motions as a matter of law.

There were extensive defensive pleadings in behalf of the defendants, most of which were ultimately stricken, leaving only general denials, which were —

Both defendants denied the plaintiff's claim of ownership, a material point. They denied that the land was within the city limits of Leesburg (immaterial except as to the propriety of joining the city as a defendant).

They formally denied that there was no record of any deed or conveyance of any land or interest in (in the subject land) to the public or any public agency of the state of Florida. This was a material matter but it was later conceded by both defendants that the plaintiff's allegation was true.

Defendants formally denied that the road was a part of the state road system and had become a public road by prescription. The

court can properly take judicial notice that the road at that point is a state road and, absent an affirmative showing of some recorded instrument conveying something to the state, can only conclude that the state does have a prescriptive right and only a prescriptive right. The court does not understand why the defendants made such a denial.

Defendants denied the making of the plat of survey. This defense was proved to be mere sham. The plat of survey was attached to the complaint. The survey was made. Who caused it to be made is immaterial.

Defendants denied that there was no evidence of the use of the area as a highway, or for drainage or ditch. This raised, at least on paper, an issue as to a material fact. The court, on the basis of the *defendants'* own affidavits and their own answer to interrogatories had to resolve this question against the defendants. More on this point later.

The defendants denied par. VII of the complaint. This paragraph alleged that at some time unknown to the plaintiff a monument was placed as shown by the plat, of the type used by the state road department, and that such installation constituted a trespass by some or all of the responsible agencies. Rule 1.110 FRCP requires denials to fairly meet the substance of the averments denied. The denial extended to all the averments of the paragraph, hence denied the facts pleaded (the placement of the monument) as well as denied the legal effect of such placing. The defendants later layed great stress on the monument, claiming that its presence served to estop the plaintiff, etc., etc. The court can only conclude that there is no genuine issue as to the continued presence of the marker and that it was and is there.

The defendants presented numerous affirmative defenses to the court by a series of pleadings. The court went to great lengths and was lenient in allowing the defendants several opportunities to assert these defenses. In essence these defenses were —

(1) estoppel because of long continued "acquiesence" in and to the placement of the monument;

(2) that the plaintiff's title was based upon a tax deed which described the land as being "south of U.S. 441;"

(3) maintenance and working of the road for the statutory four year period;

(4) the statute of limitations, §95.11, F.S., as to the claim for damages;

(5) the statute of limitations, §95.14, F.S., for the recovery of possession of property in possession of another.

The facts as we glean them from the record are as follows — The plaintiff's root of title is a tax deed from the state of Florida itself which describes the property as being "south of highway." This same description of the north boundary was continued through several mesne conveyances into the plaintiff; that the plaintiff sold the property with that description and it was later reconveyed to him using this same language; that at the time of the reconveyance to him a state road marker had been placed as shown by the map of survey. (Said map will be attached to the final judgment herein.) Apparently nobody knows just when that monument was placed but it clearly appears that it was "prior to 1947," (affidavit of John E. Baisden for SRD).

Subsequent at least to 1947 or 1948 the state road department did some work on the land extending out 50 feet from the center line. That work consisted of "mowing approximately six times per year, hand labor, weed cutting and litter pick up approximately five times per year." In the affidavit of said Baisden, in opposition to the plaintiff's motion for summary judgment, it was asserted that another act of maintenance was "filling in with dirt and grading areas washed out by rains." Allegedly that was some time subsequent to 1956. It is significant that (1) this allegation was not pleaded in the extensive affirmative defenses ultimately filed, and (2) there was no specification of the continuity, frequency nor necessity therefor to maintain the road as a means of movements. We must conclude that the defendants felt that either they could not prove this point with sufficient definitude to make it material, or that their witness was in error, or even if proved, that the point was immaterial by itself or even as an addition to other facts.

What we have then basically is the fact: that a citizen owns a piece of land over which the public has acquired a right of passage in one way or another. In other words, the public without benefit of a deed has taken the land of a private citizen for a public purpose. What then are the rights of the parties in such case?

The constitution of the United States says in plain and simple language,

"nor shall private property be taken for public use, without just compensation." Amend. V, Const. of U.S.

Next, the Florida Constitution in §12 of the Declaration of Rights uses exactly the same language. It was unchanged through all the 1838, 1861, 1865, 1868 and 1885 revisions. The same basic provision is found in the 1968 revision in art. 10, §6 as follows —

"(a) No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner . . ."

However comforting this may sound a property owner doesn't always get compensation for his property when taken for a public road. The public can acquire land for road purposes by prescription, by dedication to the public, by deed, by lease, by the Statute of Repose (the four year statute, §337.31, F.S.), or by eminent domain (see 16 Fla. Jur. 64, *Highways* §50). Full payment is usual only in cases of eminent domain, real or threatened. Compensation is not made for prescriptive or dedicated roads, nor under the "four year statute." This latter provides that the public acquires *title* to the road where it has been constructed and maintained or worked continuously and uninterruptedly for a period of four years by any county or municipality, or the state road department. And such road is deemed to be dedicated to the extent in width which it has been actually worked. §337.31(1), F.S. 1967.

The section was enacted as ch. 17307, Laws of 1935, and was re-enacted in substantially the same form as ch. 20781 1941, ch. 22858 1945, ch. 23935 1947, ch. 26547 1951 and ch. 29965 1955.

We have examined all of these acts. Reference to the 1935 act reveals that in addition to the provision for vesting of title after four years, there is a significant definition. §3 says —

"The words or terms 'road' 'public road' or 'highway' as used in this act shall be deemed to include the roadbed, right of way and all culverts, drains, sluices, ditches, waterways, embankments, slopes, retaining walls, bridges, tunnels and viaducts necessary for the maintenance of travel, dispatch of freight and communication between individuals and communities."

This section is included in all of the acts listed above, or was left untouched by them. The four year section is now found in §337.31, F.S. 1967. The definition section is now §334.03(12), F.S. 1969.

Thus we see that in spite of the provisions in both the federal and state constitutions there are several ways in which private property can be and is taken from the citizen without compensation, through a gradual erosion of the owner's rights.

This has been a bitterly fought case, well and thoroughly briefed and argued by all parties, out of all proportion to the actual values involved. Important principles have been involved as to which there is no case yet reported from the appellate courts of the state. This court is going to be guided by the constitutions, the decisions and the statutes. These do not require nor permit yet another invasion of the citizen's property rights.

The pleadings, etc. are conclusive that there is no deed to the public, no dedication by plat, no recorded plat as required by §337.31(2), F.S. 1969, no condemnation proceedings. Therefore what rights the public has must have been acquired either by prescription (presumption of a prior grant) or by virtue of said §337 F.S., a Statute of Repose.

The court takes judicial notice that this road has been a main east-west artery through Lake County for generations. But the question remains, "what width can the public claim?"

The cases of Grenell v. Scott and several others have settled the point that the width of a prescriptive road is limited to what is used *and* needed. The public is limited to what it uses. If it needs more than it has used, the balance does not go with the part used. If it uses more than it needs, it is limited to what it needs. Grenell v. Scott, 134 So.2d 866, Broward County v. Bouldin, 114 So.2d 737.

There is nothing in the pleadings, affidavits or interrogatories that sheds any light on what the public has used or needs at this point on the highway. But plaintiff was willing to and did concede that the public had acquired the 60 foot road as shown by the map of survey. There is no allegation in the pleadings, etc. that the public has any need at this time for a wider right-of-way. We do not speculate as to future needs. Therefore, the public cannot have acquired by prescription more than the 60 foot road as conceded by the plaintiff but it is the judgment of the court that it has acquired a right of way to that extent.

We now pass to the question as to whether or not the public has acquired more than the 60 foot road by virtue of the four year statute. The statute uses the words ". . . shall have been maintained, kept in repair or worked continuously and uninterruptedly for a period of four years . . ."

But the statute does not tell us what these words, "maintain, work, and keep in repair" mean and the court must now determine whether the alleged activities of the public fall within their meaning.

This leaves us in the situation of declaring what the legislative intent was, as applied to these facts. There is no doubt that we have that power and duty. In Florida Jurisprudence, *Statutes* §72, we find the following —

> "Owing to the complexities and limitations of language and frequent difficulty in communicating legal concepts in writing, statutory construction often presents problems of no little difficulty. The solution of these problems is ordinarily

the province of the judiciary, whose function it is to interpret the law and not to legislate."

And in §73 the text continues —

"Most of the various rules or principles for the construction of statutes are designed to subserve one important object, namely, to ascertain the legislative will, and to carry that intent into effect to the fullest degree. To this principle, all rules of statutory construction are subordinate. The legislative intent is the polar star by which the courts must be guided, since it is the essence and vital force behind the law. And the rules of statutory construction are the means by which courts seek to determine this intent when it is not clear."

We conclude that periodic mowing, litter pickup and grading (the latter unsupported by any affidavits or interrogatories) do not constitute qualifying acts. We think the legislature meant such acts as actual paving, ditching, cleaning of ditches, installation of culverts and drains, repairing of pavements, filling of holes occasioned by use of the roadway by the public for purposes of travel.

But, there is a more compelling reason for our holding: nowhere is there any showing of *need* for the additional 20 feet. Such need is not pleaded, nor claimed in any affidavit or interrogatory. In fact the absence of need is conclusively shown by the map of survey, which incidentally coincides with certain right-of-way maps put into the record by the state road department. These show a termination of the extra 20 feet at its southwesterly end with an abrupt narrowing of the claimed right-of-way from 50 feet to 30 feet from the center line, at the monument in question. It is obvious that the public doesn't need the extra 20 feet immediately northeast of the monument if it doesn't need it immediately southwest thereof.

A careful reading of §§334.03(13) and (15), F.S., shows that the legislative intent was essentially the same as the judicial determination in Grenell v. Scott, to wit, there must be both use (maintenance, travel, etc.) *and* need —

"(13) . . . necessary for the maintenance of travel . . ."

"(15) *Right of way.* — Land in which the state, the department, a county, or a municipality owns the fee or has an easement *devoted* to or *required* for the use as a public road."

We construe the words "devoted to" as synonymous with "actually used;" and "required" as synonymous with "needed."

Neither of these tests have been met by either defendant. There is no allegation nor profferred proof of either use or need of the disputed strip of land as we construe these words as used in the statutes and discussions.

It was strenuously argued by the defendants that failure of the plaintiff to object to the offending monument for a long period of time had the effect of estoppel or of invoking any one of several statutes of limitations against him. We cannot agree for the simple reason that any such postulate would violate the constitution. The constitution and the statutes define how a citizen's property can be taken from him for public use. The placing of monuments is not among the authorized methods. It is unlawful to remove such a marker, §339.2, F.S., but the citizen is not required to act to protect himself just because the road department sees fit to encroach on an individual's land by putting down a marker, of whatever kind. §339.28, F.S.

Parenthetically it has never been made clear to the court why the defendants denied the existence of the marker, which their general denial did, and in the next breath claim the benefit of that very marker as an estoppel or as starting the running of the statute of limitations. But it is obvious that the plaintiff's situation was not aided by his long delay in seeking removal of the marker.

We will not further extend this document by an extensive discussion of the principles set out in Downing v. Bird, 100 So.2d 57, Sup. Ct. 1958. §334.37 gives *title* to land to the state for highway purposes in contrast to a mere easement in prescriptive cases. *Downing* points out that where *title* is secured as in adverse possession cases, the adverse possession must be exclusive. We are not here holding that §343.31 will apply only where the possession (or use) of and by the state must be exclusive where this section is invoked. Our point is that the requirements as to use and possession are more strict where *title* and not a mere easement is involved. The Supreme Court said in that case —

"Acquisition of rights by one in the lands of another, based on possession or use, is not favored in the law and the acquisition of such rights will be restricted. Irian v. Nelson 1952, 207 Okl. 243, 249 P.2d 107, 28 C.J.S. *Easements* §10, p. 645.

"Any doubts as to the creation of the right must be resolved in favor of the owners."

Finally, the defendants claimed that the plaintiff's root of title was a tax deed which used the description above recited and that the tax deed should be construed to reflect an intention by the state to claim the wider right of way. There is no claim that plaintiff

was on notice as to any such intent. This "defense" merely begs the question.

Judgment will be entered accordingly.

*Summary final judgment, March 9, 1970:* This cause came on for hearing on the motions of all parties for summary judgment and the court finds that there is no genuine issue as to any material fact and the plaintiff is entitled to judgment as a matter of law,

It is therefore ordered and adjudged that the southeasterly boundary line of state road 50, also known as U. S. 441 and being the easterly end of Main Street, Leesburg, is 30 feet distant from the center line of the pavement of said road where it passes through the

> west 57 feet of the east 332 feet of north 811.6 feet of government lot 1, section 25, township 19 south, range 24 east in Lake County, Florida, as shown by map of survey hereto attached and made a part hereof.

The defendant state road department is directed to forthwith remove the marker shown on the said map of survey.

No costs are assessed against the defendants.