Milton M. MEFFORD, Jr.,
Appellee/Counter–
Appellant,

and

Thelma C. Mefford, Plaintiff,

v.

Katherine Q. Gallagher SINCLAIR, and Russell H. Harbaugh, Jr., Appellants/Counter–Appellees.

No. 79628.

Court of Appeals of Oklahoma,
Division No. 3.

May 11, 1993.

Rehearing Denied June 29, 1993.

Certiorari Denied Sept. 15, 1993.

John S. Athens, G.W. Turner, III, Tulsa, for appellants, counter-appellees.

David L. Fist, Mark S. Rains, Tulsa, for appellee, counter-appellant.

## MEMORANDUM OPINION

HANSEN, Chief Judge:

In this action to determine the legal status of a road, the parties each appeal from the trial court's *Final Judgment.* Milton Mefford (Mefford)[1] seeks review of the trial court's determination that the road in question was not public. Katherine Sinclair and Russell Harbaugh (Sinclair[2]) seek review of the trial court's denial of their application to tax attorney fees against Mefford.

Mefford filed his Petition initiating this action on May 6, 1977. He alleged that on May 5, 1977, Sinclair had wrongfully caused a locked gate to be placed across the "public road" which traversed her property, and which provided access to the adjacent property on which his residence was located.[3]

Among other things, Mefford sought damages for "direct reduction in value" of his property and an injunction restraining Sinclair from maintaining the locked gate or otherwise preventing his use of the contested road. The trial court issued a temporary restraining order on the day Mefford filed his Petition.

Sinclair filed her Answer to the Petition on July 10, 1985.[4] She defended on the

---

1. Thelma Mefford, Milton Mefford's wife, dismissed her claims during pendency of this action and is not a party to the appeal.

2. Russell Harbaugh remains a party to the appeal, but he played only a minimal role as Sinclair's agent and attorney in the acts giving rise to the suit.

3. Mefford's Petition noted his property was "not accessible to an 'open' section line road".

4. The reason for this delay is unclear from the record. The only interim proceeding reflected is an April 1978, application for original jurisdiction in the Supreme Court.

theory the roadway in question was not public, but was privately owned and maintained by her. Sinclair also counterclaimed, asking the court to find Mefford had no property interest in the road and to quiet title in her. She later amended her counterclaim to include causes of action for trespass and nuisance.

As noted by Sinclair in argument to the trial court, this matter continued to lie "fallow" until January 1991, when Sinclair moved for summary judgment on both Mefford's claims and her counterclaims. In May 1991, the trial court granted Sinclair's motion for summary judgment as to Mefford's claims, but reserved judgment on Sinclair's counterclaims because Mefford had never filed an answer.

Shortly thereafter Sinclair dismissed all counterclaims except the one to quiet title. Mefford filed his answer to Sinclair's remaining counterclaim and on the same day amended his Petition to allege an easement by implication over the road. The trial court's journal entry of judgment from the May 1991, order granting summary judgment was filed in August 1991.

In November 1991, Sinclair filed a "supplemental" motion for summary judgment on the question of easement by implication. Mefford did not respond to this "supplemental" motion, but in February 1992, filed a motion to reconsider the August 1991, judgment.

In March 1992, the trial court denied Mefford's motion to reconsider, granted Sinclair's supplemental motion for summary judgment, dissolved the temporary restraining order entered on May 6, 1977, and quieted title to the roadway property in Sinclair.

The trial court denied Sinclair's application for award of attorney fees. Both parties appeal from the trial court's *Final Judgment*, which memorializes the rulings on summary judgment and on the application for attorney fees.

Mefford's first proposition on appeal is that material facts on the public road issue were in dispute and summary judgment should not have been entered. We agree [5].

We therefore need not address Sinclair's contentions regarding trial court error in refusing to tax attorney fees. Further, because our holding here puts the parties' property interests back into question, that portion of the trial court's order quieting title in Sinclair is rendered moot.

■ Summary judgment is appropriate only when there is no substantial controversy as to any material fact, and one party is entitled to judgment as a matter of law. *Flanders v. Crane Co.*, 693 P.2d 602 (Okla.1984). All inferences and conclusions to be drawn from the undisputed facts must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Flanders*, at 605.

■ More specifically, where the evidence is conflicting in an action to establish a property interest by prescription [6], it is an issue of fact to be determined by the trier of the facts. *Arbuckle Realty Trust v. Southern Rock Asphalt Co.*, 189 Okla. 304, 116 P.2d 912 (1941).

■ In explaining its May 1991, partial summary adjudication of Mefford's claims, the trial court stated from the bench:

> The crucial point of this case I believe to be the permissive use that was the origin of the use of the traveled roadway ... supporting affidavits of [Sinclair's] motion suggest that the use from the outset was permissive use and for that reason the use of the roadway can never ripen into title by prescription.

While the trial court correctly stated the rule of law—permissive use of a way over

---

5. In its rulings on summary judgment, the trial court specifically found the road had not become public by dedication for use by the public, by direct action of governmental authorities, by prescription or by virtue of an easement by implication. We find the record sufficient only to raise the issue of easement by prescription.

6. The limitation period for gaining an easement by prescription is fifteen years. *Telford v. Stettmund*, 205 Okla. 86, 235 P.2d 692 (1951); 12 O.S.1991 § 93(4).

the land of another will never ripen into an easement [7]—our review of the record does not reveal uncontroverted evidence that the "origin of the use" was permissive. In fact, neither party appears to be aware of the date and nature of the origin of the roadway.

The record indicates Mefford has lived on his property since 1959. His predecessors in title were the Howell and Fry families, who moved onto the property in 1956 and 1932, respectively. Mefford's evidentiary materials reflect both families used the roadway for access to their property without permission from Sinclair or her predecessors in title, and that the road was similarly used by various members of the public.

Sinclair has owned her property since 1967, and she took title from her father, who had owned the property since 1941. Neither lived on the property, but operated the farm with resident managers. Sinclair's earliest predecessor in title reflected in her evidentiary materials was a Mr. Grimes, whose ownership dated to at least 1917. The road was in existence during Grimes' ownership. Those materials also reflect use of the roadway was with permission of the incumbent owner.

Sinclair's property borders Mefford's property on the east and south. The road in question runs over Sinclair's property from a state highway to the south and ends on Mefford's property. Sinclair's property is cleared pasture land, with a house and other farm improvements. It has been enclosed with a fence since at least 1956, but there were no gates across the roadway until 1977.

As in other matters relating to gaining a property interest by prescription, the use of a claimed public highway or road must be adverse, continuous, and exclusive throughout the prescriptive period. *Irion v. Nelson,* 207 Okla. 243, 249 P.2d 107 (1952).

■ The burden of proof is on one claiming an easement by prescription, but the burden may sometimes be shifted to the opposite party. *Irion v. Nelson,* 249 P.2d at 109. The burden is shifted where there is a showing of open, visible, continuous and unmolested use of a roadway for a sufficient time to acquire an easement by adverse use. *Telford v. Stettmund,* 205 Okla. 86, 235 P.2d 692 (1951).

■ Under the *Telford* rule the use will be presumed to be under a claim of right and the owner of the servient estate must rebut the presumption of easement by showing that use was permissive. *Telford,* 235 P.2d at 695. Where the traversed property is cleared and enclosed by fence, as it was here and in *Telford,* it will also be presumed the use was with the knowledge of the owner, and if the owner permits use of the road for the requisite period without attempting to interfere, his action will be taken as implied consent. *Telford,* 235 P.2d at 695. Here there is some evidence of the owners' actual knowledge of use of the roadway by Mefford and his predecessors.

In *Telford,* with facts similar to the present case, the Supreme Court affirmed the trial court's judgment finding a prescriptive easement even though there were gates on the roadway and some interruption of use. The Supreme Court found the gates did not necessarily evince an intention of the owner to preclude use of the roadway, and that "continuous" use meant only the exercise of the right more or less frequently according to the nature of the use. *Telford,* 235 P.2d at 696.

Sinclair argues easement by prescription is precluded because use of the road by the public was not exclusive, that is, she also used the road for operation of her farm. Sinclair cites *Board of County Commissioners of Jackson County v. Owen,* 196 Okla. 538, 166 P.2d 766 (1946). In that case, the Supreme Court determined there was no prescriptive easement because, among other things, the "road was not used exclusively as a road, but was used also as a turn-row".

7. See, *Telford v. Stettmund,* supra note 6, 235 P.2d at 695.

This rationale was later discussed by the Supreme Court in *Irion v. Nelson*, 249 P.2d at 112, where the road was also used as a "turn-row". In *Irion*, citing *Owen*, the Supreme Court noted use of the road as a turn-row "would indicate that the road was not use exclusively *as a road* ". (emphasis added).

In the evidentiary materials before us, Sinclair's use of the road in operation of her farm was consistent with that for which one would ordinarily use a road. It would defy common sense to require total exclusion of the owner for public use to ripen into an easement by prescription.

This case turns on the question of permissive use. The material facts regarding that question are clearly controverted. Essentially, Mefford's evidence says there was public use without permission, and Sinclair's evidence would indicate all use of the roadway was permissive.

 We recognize easements over private property acquired by prescription are not favored by the courts. *Irion v. Nelson*, 249 P.2d at 109. However, of equal import is the rule that summary judgments are also not favored, and should be granted only where it is "perfectly clear" that there are no issues of material fact in a case. *Flanders v. Crane*, 693 P.2d at 605. Even when the trial court believes a directed verdict will be necessary, it should ordinarily allow the evidence to be heard and then direct a verdict rather than grant summary judgment. *Flanders*, at 605.

We find this matter should have been allowed to be considered by the trier of facts for determination. The trial court's *Final Judgment* is REVERSED, and this matter is REMANDED to the trial court for further proceedings consistent with this opinion.

BAILEY, P.J., and HUNTER, J., concur.