2016 OK CIV APP 29

Floyd MANAR and Margie M. Manar, Plaintiffs/Counter–Defendants/Appellees/Counter–Appellants,

v.

James H. WESSON and Jamie Wesson, Defendants/Counter–Claimants/Appellants/Counter–Appellees.

No. 113,310.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 8, 2016.

Hack Welch, Hugo, Oklahoma, for Plaintiffs/Counter–Defendants/Appellees/Counter–Appellants.

Thomas J. Hadley, Hugo, Oklahoma, and Charlie Rowland, Antlers, Oklahoma, for Defendants/Counter–Claimants/Appellants/Counter–Appellees.

KENNETH L. BUETTNER, Vice–Chief Judge and Presiding Judge.

¶1 Defendants/Counter–Claimants/Appellants/Counter–Appellees James H. and Jamie Wesson appeal from judgment finding Plaintiffs/Counter–Defendants/Appellees/Counter–Appellants Floyd and Margie M. Manar have an easement by prescription to use a roadway crossing property owned by the Wessons. The Manars appeal the trial court's finding that the road is not a public road. The clear weight of the evidence shows the road was not dedicated to public use nor was there prescription of the way by the public when it was a wagon trail; we therefore affirm the trial court's finding on that question. The clear weight of the evidence also shows, however, that the road was built and used with the permission of the Wessons'

predecessors and therefore the trial court erred in finding the Manars have an easement by prescription. Permissive use of a road is a license which does not ripen into an easement. At most the Manars had a license which the Wessons were free to revoke. We therefore reverse the trial court's finding that the Manars have an easement.

¶ 2 At issue in this case is the status of a quarter-mile long gravel road which runs north from Highway 109, across the Wessons' property, and ends at the corner of a tract owned by the Manars.[1] The road was built in 1979. After a dispute arose over the use of the road, in May 2011 the Manars filed their Petition seeking a judgment declaring that the road had become a public road by adverse possession and an injunction against the Wessons closing the road.

¶ 3 The Wessons answered and denied a road could become public by adverse possession. The Wessons agreed they had locked access to the road but averred they had given the Manars a written easement to use the road and a key to the locked gate. The Wessons asserted their predecessor in title had given the Manars' predecessor permission to build the road for access because the property was then landlocked. The Wessons denied the Manars had an easement by prescription. The Wessons asserted they continued to allow the Manars to use the road as a courtesy even though their property was no longer landlocked. The Wessons asserted that after their property was burglarized and vandalized, they decided to lock access to the road and to give the Manars a key. The Wessons asserted the Manars then began a series of acts damaging the gate, trespassing on the Wessons' property, and threatening the Wessons. For their counterclaims, the Wessons sought an injunction preventing the Manars from damaging the gate and trespassing, an order quieting title to the road, and damages for trespass, assault and battery, and intentional injury to property.

¶ 4 The Manars answered and denied the Wessons' tort claims. The Manars asserted that even if they did not have an easement by prescription, there was an implied dedication of the road, or the road had become public by the county maintaining it, or the Manars were entitled to an access easement.

¶ 5 The trial court granted a temporary injunction in July 2011 directing that the road was not open to the public and granting the Manars access to the road so long as they kept the gates locked. Following bench trial in 2013, the trial court entered its Journal Entry of Judgment October 9, 2014, in which it described the road and found that it is not a public road but that the Manars "have an easement that comports to the existing traveled roadway which was created and acquired by prescriptive use." The trial court permanently enjoined the Wessons from interfering with the Manars' use of the road or obstructing the road, and directed that the Manars could not use the easement in any manner that diminishes the Wessons' enjoyment of their property or that causes damage to the Wessons' property. From this judgment, both parties appeal.

¶ 6 The Wessons argue that the trial court erred in finding the Manars had an easement by prescription. The Manars argue that the trial court erred in finding that the road was not a public road and that the trial court's order that they may not use the easement in any manner which diminishes the Wessons' enjoyment or damages the Wessons' real property was vague and should be clarified or omitted from the judgment.[2] Actions to quiet title or determine an easement are equitable proceedings and therefore we will affirm the judgment unless it is against the clear weight of the evidence or

1. The road bisects the S/2 of the SW/4 of Sec. 18–7S–15E. The Wessons own all of the SW/4 except for the N/2 of the NE/4 of the SW/4 and the SW/4 of the NE/4 of the SW/4, which are owned by the Manars. (The parties own additional contiguous properties as well).

2. In their Reply Brief the Manars agreed they had cited no authority for their argument that the enjoyment provision was vague and the Manars averred they had "no objection to said proposition being dismissed." Because we reverse the finding of an easement, we need not consider this argument, but we recognize that generally the servient tenant may install a gate across an access easement, so long as the gate does not unreasonably burden the dominant tenant's use of the easement. *Tidwell v. Bezner*, 2010 OK CIV APP 143, 245 P.3d 620.

contrary to law. *Irion v. Nelson*, 1952 OK 331, 249 P.2d 107, 207 Okla. 243.

¶7 The evidence at trial indicated that an old wagon trail had existed along the path of the disputed roadway since the 1940s and that some people used it to get to an area, apparently now owned by the Manars, for hunting, fishing, gathering pecans, and picnicking. The witnesses indicated the wagon trail was gated. By 1977, Ronnie Holiday owned the property now owned by the Manars. Otis Lane owned the SW/4 of the SW/4 and Don Kirkland owned the SE/4 of the SW/4, the relevant tracts now owned by the Wessons. Holliday testified that he talked to Lane about opening a road in 1977 and Lane said he would give him fifteen feet if Holliday would "build him a good fence." Holliday testified they shook hands on the deal and Holliday built the fence. Holliday testified that in 1979 he spoke to Kirkland and told him the road was not wide enough. Holliday testified that Kirkland also offered to give him fifteen feet if he would build a fence like he had built for Lane. Holliday testified the County built the gravel road at his request. Kirkland testified that Holliday did not pay him for the fifteen feet and that he gave his permission for the road as a good neighbor gesture.

¶8 The evidence included a resolution in which the County disclaimed any interest in the road and stated that the road had never been on the County or State road inventory and had never been dedicated to public use. While the weight of the evidence was that the wagon trail had been gated, the gravel road was not gated until the Wessons installed a gate in 2011. The Wessons purchased Lane's property in 1988 and Kirkland's property in 1992. James Wesson testified the abstracts for both properties did not identify a road easement and that before he bought each tract, the sellers told him the road was used permissively for the purpose of accessing landlocked property. Floyd Manar testified that the road was the only current way

to access the rental house on his property, but that he could build a road further north on his property to access the rental house. Manar testified that he lives on property adjacent to the north.

¶9 "An easement is the right of one person to go onto the land of another and make a limited use thereof. Easements may be expressly created by deed or come about by necessity or prescriptive use or ... may be implied into a deed." *Story v. Hefner*, 1975 OK 115, 540 P.2d 562, 566. In this case it is undisputed there was no easement by deed until the Wessons granted then terminated a written easement to the Manars in 2011. Nor does the record support an easement by necessity or implication because there was no evidence of prior unity of title.[3]

¶10 An easement by prescription is an easement obtained by adverse possession for the prescriptive period, which in Oklahoma is fifteen years. Permissive use of a way over the land of another will not ripen into an easement, regardless of the number of years of use. *Johnson v. Whelan*, 1935 OK 312, 42 P.2d 882, 171 Okla. 243. The Manars contend the wagon trail was a public road by prescription before Lane and Kirkland offered to allow Holliday to use part of their properties to build the road.

> To establish an easement for roadway by prescription, the land in question must have been used by the public with the actual or implied knowledge of the landowners, adversely under claim or color of right, and not merely by the owners' permission, and continuously and uninterruptedly, for the period required to bar an action for the recovery of possession of land or otherwise prescribed by statute; when these conditions are present, the easement for roadway exists by prescription, otherwise not.

*Hurst v. Stowers*, 1965 OK 30, 399 P.2d 477.

¶11 The clear weight of the evidence in this case shows that the road at

3. "Generally, to show the existence of a common law easement of necessity, a plaintiff must prove the following elements: (1) unity of title; (2) conveyance of part of the land previously held under unity of title; and (3) a resulting necessity for access to the property at the time of its severance." *Johnson v. Suttles*, 2009 OK CIV APP 89, ¶9, 227 P.3d 664. An easement by implication adds to these elements the requirement that the easement was in actual use at the time of the conveyance separating the previously unified tract. *Id.* at ¶14.

issue was created by permission. Although the testimony was disputed as to the number of people who used the wagon trail and whether they had permission to do so, the witnesses agreed that generally a person goes beyond a gate because he has obtained permission to do so. And the weight of the evidence was that during the time that the wagon trail existed, the owners allowed others to go through the gates as part of being good neighbors. The use of gates shows an owner's intent to exclude the public and destroys any public prescription of a way. *Irion, supra,* 249 P.2d at 109, quoting 25 Am. Jur. 34–348. And, where use of a way has been permitted as part of a good neighbor policy, there must be evidence that the owners had notice people were using the property adversely. *Irion, supra,* at 110, quoting *Friend v. Holcombe,* 1945 OK 267, 162 P.2d 1008, 196 Okla. 111. We find no error in the trial court's decision that the road was not public.

¶ 12 We next consider the trial court's finding that the Manars had acquired a private easement by prescription. Permissive use is fatal to a claim for a prescriptive easement. As noted above, permissive use of a way over the land of another will never ripen into an easement, no matter how long it is indulged. *Whelan, supra.* In this case, the evidence was undisputed that the road was built based on express permission from Lane and Kirkland. James Wesson testified he believed the road was permissive when he bought his properties and he continued to allow the Manars to use the property until 2011. Accordingly, the trial court erred in finding that an easement arose by prescription in this case.

¶ 13 Because the weight of the evidence shows that Lane and Kirkland affirmatively granted the use of fifteen feet of their properties for the road, we consider whether there was an oral grant of an easement in this case. In Oklahoma, it is settled that an easement is an interest in land and therefore must be granted in writing if not obtained by prescription. *Catterall v. Pulis,* 1929 OK 63, 278 P. 292, 137 Okla. 86; 15 O.S.2011 § 136.

¶ 14 An exception to the writing requirement has been found only where adjacent neighbors orally agree to each use part of their properties to create a shared driveway or a shared staircase. In *Whelan, supra,* two neighbors agreed to build a driveway along the line separating their properties, roughly half on either side, and to share the cost. The driveway went from the street to small buildings behind their houses. Each property was later sold to others. At some point, one of the successor owners sought to build a fence along the lot line and expand the driveway on her side into her own yard. The other owner sought an injunction against the interference with the driveway, which the trial court granted. On appeal, the defendant urged that the plaintiff had only a license to use the part of the driveway on the plaintiff's property because it was created by permission. The Oklahoma Supreme Court agreed that a permissive use of a road over the land of another is a license which does not ripen into an easement. Nevertheless, the court held that after the driveway was built, each owner was asserting an adverse interest in the portion of the driveway on the other party's land and therefore created a presumption of an easement after fifteen years. 42 P.2d at 883. The key fact in *Whelan* is that the adjacent owners each agreed to create the way and used it continuously for the prescriptive period. Indeed, the Oklahoma Supreme Court later referred to *Whelan* as approving the "mutual use" rule, which the court described as a narrow rule applying only where two owners of adjacent property construct a driveway and use it for the prescriptive period, and in such case the two adjacent owners have an easement on the land of the other for the continuing use of the driveway. *Friend, supra,* 162 P.2d at 1011.

¶ 15 The facts of this case are plainly distinguishable. Here, adjacent owners, Lane and Kirkland, agreed to allow a third party to build a road over their properties for his benefit. There is no evidence that Lane and Kirkland used the road adversely to each other or ever claimed an easement in the road. In *Friend,* the court noted no case had applied the mutual use rule to a roadway consecutively crossing the land of different owners. We are constrained to follow the Oklahoma Supreme Court's holdings and find that on the facts presented here, despite the

apparent performance of an oral grant of an easement, the Manars at best have a license.[4]

¶ 16 The facts in *Friend* are similar to the facts here. In that case, a road across the defendant's property had been in use for over 40 years when the defendant installed a fence across the road. The trial court there agreed with the plaintiff that the road had been adversely possessed by the public. The Oklahoma Supreme Court found that the use was permissive and reiterated that permissive use can never ripen into an easement. The court reversed the finding of an easement. *Id.,* 162 P.2d at 1011.

¶ 17 The clear weight of the evidence in this case shows that the road was built and used with permission. Accordingly, the use of the road was a license which could not ripen into an easement, regardless of the length of time it was in use. We reverse the trial court's finding of an easement by prescription on the facts presented here.

AFFIRMED IN PART/REVERSED IN PART.

MITCHELL, J., and GOREE, J., concur.

**4.** We recognize that some states have found that an oral agreement for the use of land may be taken out of the statute of frauds by partial performance. See *Royer v. Gailey,* 449 P.2d 853, 855, 252 Or. 369 (1969); *Birdsey v. Kosienski,* 101 A.2d 274, 278, 140 Conn. 403 (1953). Most state cases on this question involve the mutual use rule to some degree.