2002 OK CIV APP 108

**A.B. LUKER and Virginia A. Luker, d/b/a Luker Farm Partnership, Plaintiffs/Appellants,**

v.

**BOARD OF COUNTY COMMISSIONERS OF GREER COUNTY, Defendant/Appellee.**

**No. 96,425.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 4, 2002.

As Corrected Nov. 5, 2002.

---

B. Christopher Wray, III, Michael K. Duffy, Altus, Oklahoma, and Myrna Schack Latham, Oklahoma City, OK, for Plaintiffs/Appellants.

Michael R. Chaffin, Chickasha, OK, for Defendant/Appellee.

## OPINION

CARL B. JONES, Judge:

¶ 1 This is an appeal from the trial court's denial of Appellants, A.B. Luker and Virginia A. Luker, d/b/a Luker Farm Partnership (Lukers), request for injunctive relief requiring the Board of County Commissioners of Greer County (County) to repair a dike and restore the original drainage system around the west half of Section 7, Township 4 North, Range 21 West, Indian Meridian in Greer County, Oklahoma. The Lukers also appeal the trial court's finding that County acquired a prescriptive right to the centerline road which bisects the east and west halves of Section 7 and runs from north to south. The Lukers also appeal their waiver of their right to seek money damages from the jury. For the reasons set forth hereinafter, we affirm in part the trial court's decision and remand with directions to the trial court to specifically delineate the parameters of County's prescriptive easement to the centerline road.

## BACKGROUND

¶ 2 The Lukers have farmed the west half of Section 7 for many years. In 1995, Greer County experienced significant rainfall. The Lukers' property and neighboring properties were flooded. The Lukers claim the flooding in 1995 occurred because County failed to repair a breach in a dike located on County's right-of-way on the north boundary of Section 7 and failed to repair and clear the drainage system around the west half of Section 7, including culverts and ditches on County's roadways. The Lukers claim their property did not historically experience substantial flooding even during heavy rains. The Lukers made demand upon County to repair and maintain the existing drainage system which had been in place for more than 50 years. In 1995, County hired Robert D. Leonard, consulting engineer, to conduct a study and prepare a new drainage plan to modify the diversion ditch system along the north boundary of the NW/4 of Section 7 (Leonard Plan). The Lukers rejected the Leonard Plan for various reasons. County also conferred with other landowners in the area to determine the best approach to control the drainage and flooding.

¶ 3 The Lukers' property was again flooded in 1996 and 1997. In 1997, County removed a railroad berm that crossed the centerline road; changed the grade and raised the section line road on the west side of Section 7 and the centerline road between the east and west halves of Section 7; constructed ditches and berms adjacent to the

centerline road and made other repairs without notice to or consent of the Lukers.

¶ 4 In 1998, the Lukers sued County for negligent failure to maintain and repair county roadways, trespass on the Lukers' property, and nuisance. The Lukers sought monetary compensation for damages to their property and crops and injunctive relief requiring County to repair, maintain and restore the original drainage system. The Lukers also claim the changes to the centerline road were not proposed in the Leonard Plan; were unauthorized; were performed on private property; and caused them additional damages because excess ditch dirt was dumped on their property and even more surface water from adjacent lands to the north now flood across their property. They also complain that at the time of the trial in May, 2001, the breach in the dike was still open. County denied its liability, claiming in part the Lukers' damages were caused by an "Act of God." County claimed maintenance and repairs of roadways and drainage systems are discretionary and the centerline road was acquired by prescription. As a result, County did not have to obtain the Lukers permission or consent to complete the maintenance and repairs.

¶ 5 After trial on the merits, testimony of witnesses and presentation of documentary evidence, the trial court summarized the Lukers' request as follows:

The plaintiffs in this case, in effect, [have] asked the county to substantially maintain a dike along the north side of the Foster property, the northwest quarter of Section 7, and maintain the diversion of water which all witnesses testified came from drainage some two sections of land to the north of Section 7. The plaintiff asks that the diversion be maintained and the water be taken on to the west instead of going south and west towards the natural drainage, in effect, changing the water over a water course to the west, rather than following the drainage system that nature put

there before there was a railroad track and before there was a dike.

¶ 6 Thereafter, the trial court denied the Lukers' motions for directed verdict and request for injunctive relief finding the centerline road was a public right-of-way, acquired by County through prescription, and that County acted reasonably in digging ditches down the centerline road in an effort to improve drainage to the south. The trial court also determined County is not responsible for the flooding and due to the acceleration and collection of the water from the north, County cannot be compelled to maintain the diversion system that caused the water to go to another water source when that is not the natural flow.

## STANDARD OF REVIEW

¶ 7 In reviewing the trial court's denial of injunctive relief and grant of a prescriptive easement, we adhere to the principals that such matters are of equitable cognizance and are within the sound discretion of the trial court. Accordingly, a judgment refusing to issue an injunction and granting a prescriptive easement will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence. *James v. Board of County Com'rs of Muskogee*, 1999 OK CIV APP 47, ¶ 7, 978 P.2d 1002, 1003; see also *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, ¶ 4, 925 P.2d 546, 549. We also recognize an injunction is an extraordinary remedy that should not be lightly granted. *Id.*

## ANALYSIS AND REVIEW

¶ 8 The Lukers allege the trial court's determination that County had no duty to repair and restore the existing drainage system surrounding the west half of Section 7 to its previous condition is contrary to law and against the clear weight of the evidence. The Lukers urge County had the mandatory duty under 69 O.S.1991 § 601 [1] to maintain

---

1. Section 601 A. provides, in relevant part:

A. The county highway system shall be composed of all public roads within any county, less any part of any road or roads which may be designated as a state highway by the State Transportation Commission. It shall be the duty of the board of county commissioners in each county to construct and maintain as county highways those roads which best serve the most people of the county.... The boards

and repair the county roadway and drainage system around Section 7; and, County's failure to do so caused irreparable injury to the Lukers' property; therefore, they are entitled to their requested injunctive relief.

¶ 9 County asserts the denial of the requested injunctive relief should be affirmed because County had the discretion to choose road maintenance methods which are best for the whole county, not just a single landowner. County urges although it may have a ministerial duty to construct and maintain the roads, the precise method of road maintenance is discretionary. County's evidence was that the proposed method of maintenance for Section 7, as recommended in the Leonard Plan, was accepted by a majority of the landowners in the area, but rejected by the Lukers. County urged it had the discretion under § 601 to reject the demands of a single landowner if their demands appear to be against the interest of the majority.

■■■ ¶ 10 In making our decision, we are guided by Oklahoma Supreme Court's explanation of § 601 in *Oldfield v. Donelson,* 1977 OK 104, 565 P.2d 37:

> Under the provisions of 69 O.S.1971 § 601, the Boards of County Commissioners of various counties have "exclusive jurisdiction" over the designation, construction, maintenance and repair of all of the county highways and bridges. When the Legislature vested the Boards of County Commissioners with "exclusive jurisdiction" over the designation, construction and maintenance of county highways, the Legislature mandated that the Board of County Commissioners must exercise considerable official discretion in the exercise of their jurisdictional powers. This Court will not interfere with the exercise of such discretion except in rare cases.

1977 OK 104 at ¶ 9, 565 P.2d at 40–41.

■■■ ¶ 11 The *Oldfield* case instructs the boards of county commissioners have a duty to construct and maintain, as county highways, those roads *which best serve the most people of the county.* We find County pre-

sented sufficient evidence that its maintenance and repairs of the roadways and drainage system around Section 7 were reasonable and for the benefit òf most of the landowners. We also find sufficient evidence and the law support the trial court's determinations that County cannot be held responsible for the flooding and cannot be compelled to maintain the original diversion system.

■■■ ¶ 12 Next, the Lukers urge the trial court's finding that County acquired a prescriptive easement to the centerline road is contrary to law and against the clear weight of the evidence. The Lukers ·assert County failed to sustain its burden of proving all elements necessary to sustain its claim of a prescriptive easement. The Lukers' evidentiary materials and testimony indicated the road was private; it was constructed by A.B. Luker's father and another neighbor for easy access to the Lukers' property; and no official action has ever been taken to designate or open the centerline road to the public.

■■■ ¶ 13 "It is well settled in this state that the continuous adverse use of a way over the land of another for a period of 15 years will ripen into an easement. In such use for 15 years the law raises a presumption of grant of easement." *Telford v. Stettmund,* 1951 OK 217, ¶ 10, 235 P.2d 692, 694–695. In order to establish a public highway by prescription, County had to show the use of the public road was adverse, continuous, and exclusive throughout the prescriptive period. *Mefford v. Sinclair,* 1993 OK CIV APP 95, ¶ 19, 859 P.2d 1127, 1130.

¶ 14 County put on evidence that the centerline road has been on County's road inventory since 1961; it is open to the public; and the road has been publicly maintained. County contends this evidence supports the trial court's finding of a prescriptive easement. The Lukers contend the testimony was in conflict as to whether the centerline road had been maintained by County prior to 1997.

■■■■ ¶ 15 Where the evidence is conflicting in an action to establish a property

---

of county commissioners of the various counties shall have exclusive jurisdiction over the designation, construction and maintenance

and repair of all of the county highways and bridges therein.

interest by prescription, it is an issue of fact to be determined by the trier of the facts. *Arbuckle Realty Trust v. Southern Rock Asphalt Co.,* 1941 OK 237, ¶ 0, 116 P.2d 912. Also, in an action of purely equitable cognizance, the trial court determines the credibility of the witnesses and the weight and value to be given their testimony. *James,* 1999 OK CIV APP 47 at ¶ 7, 978 P.2d at 1003. Based on the testimony and evidence at trial, the trial court found the road had been in place for some fifty years and that County had been maintaining the road for some time. We think there is competent evidence, although controverted, to justify the trial court's determination that County met the fifteen year requirement to acquire a prescriptive easement to the centerline road. Accordingly, we will not disturb such determination.

¶ 16 We do agree with the Lukers' argument that the trial court's order granting the prescriptive easement is legally deficient because it does not include the dimensions of the roadway. This Court has previously held if a judgment purports to transfer real property, it must describe the particulars of that estate in sufficient detail that all will know its bounds. *James v. Board of County Com'rs of Muskogee,* 1999 OK CIV APP 47, ¶ 14, 978 P.2d 1002, 1004. We therefore remand with directions to the trial court to determine the precise location and width of County's prescriptive easement to the centerline road.

¶ 17 The Lukers also allege County did not have the right to perform work on the centerline road without their consent. However, this contention is dependant on our reversal of the trial court's finding that County acquired a prescriptive easement. Because we affirm, this allegation of error has no merit.

¶ 18 For their final proposition, the Lukers urge the trial court had no legal basis to force them to elect their remedy. The Lukers claim at the start of trial, the trial court instructed they could proceed to trial on only one form of remedy, either injunctive relief by the court or monetary damages by the jury, but not both. The Lukers claim they elected to waive their right to proceed to jury trial on the issue of damages because of this instruction. We have searched the record carefully and fail to find this instruction. Instead, the record reflects at the inception of trial, Appellants' counsel specifically waived a jury trial and remained silent and did not object to the statement made by County's counsel clarifying the case would proceed on the injunctive relief and not on money damages. It was only after Appellants' second request for a directed verdict that Appellants' counsel made an offer of proof alleging the trial court instructed Appellants to choose their remedy and that this was error. During such offer of proof, the trial court admonished Appellants' counsel that his characterization of the trial court's statement was incorrect. The trial court thereafter stated to Appellants' counsel: "You made an election to waive your right to proceed to jury trial on the issue of damages and proceed solely on the injunctive basis of asking affirmative relief of this court. That's what you did."

¶ 19 Based on the record before us, we find the Lukers voluntarily waived their right to proceed on the issue of damages to a jury. Accordingly, they cannot now complain about the trial court's actions in proceeding with the trial of their claim for injunctive relief only.

¶ 20 For the reasons set forth above, the trial court's judgment is affirmed in part and remanded in part with instructions to identify with particularity the parameters and boundaries of the County's prescriptive easement to the centerline road.

¶ 21 AFFIRMED IN PART AND REMANDED with directions to the trial court.

HANSEN, J., sitting by designation, and JOPLIN, V.C.J., concur.